FILED

DEC 3 0 2005

NANCY MAYER WHITTINGTON, CLERK
CO.S. DISTRICT COURT

Revised 10/86

JOHNSON , JAMES F.
**NAME**

DCDC NO. 119-202
**CRIMINAL CASE NUMBER**

DCDC NO. 119-202
**PRISON NUMBER**

DISTRICT OF COLUMBIA JAIL
**PLACE OF CONFINEMENT**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA.

JOHNSON , JAMES F.           )
(Full Name)                  )
                             )
            **Petitioner**   )
                             )
        **VS**               )
WARDEN - DENNIS HARRISON(acting) )
DC JAIL                      )
1901 D St. SE  Wash.,DC      )
(Name of Warden, Superintendent,) )
Jailor, or authorized person )
having custody of petitioner) )
                             )
         **Respondent**      )

CASE NUMBER  1:05CV02504

JUDGE: Richard W. Roberts

DECK TYPE: Habeas Corpus/2255

DATE STAMP: 12/30/2005

(If petitioner has a sentence to be served in the future under a
Federal judgment which he wishes to attack, he should file a motion in
the Federal court which entered the judgment)

### PETITION FOR A WRIT OF HABEAS CORPUS
### BY A PERSON IN CUSTODY
### IN THE DISTRICT OF COLUMBIA OR IN LORTON REFORMATORY

### INSTRUCTIONS--READ CAREFULLY

(1)  This petition must be legibly handwritten or typewritten
and signed by the petitioner.  Any false statement of
a material fact may serve as the basis for prosecution and con-
viction for perjury.  All questions must be answered concisely in
the proper space on the form.

(2)  Additional pages are not permitted except with respect to the facts
which you rely upon to support your grounds for relief.  No citation
of authorities need be furnished.  If briefs or arguments are sub-
mitted, they should be submitted in the form of a separate memoran-
dum.

(3)  Upon receipt, your petition will be filed if it is in proper order
[...] a $5.00 filing fee.

RECEIVED

DEC - 7 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

In Re;354 F.Supp.2d I & II (RMU)(AK) CA 03-2007
173 F. Supp.2d 35 (EGS)  CA 01-0010

## JURISDICTION

FIRST Amendment, United States Constitution….( in pertinent part ) " or the right of the people peaceably to assemble, and to petition the Government for redress of grievances."

28 USC 2241 POWER TO GRANT WRIT:
  " (a) Writs of habeas corpus may be granted by the Supreme Court, any
      justice thereof, the district courts and any circuit judge within their
      respective jurisdictions. The order of a circuit judge shall be entered
      in the records of the district court of the district wherein the restraint
      complained of is had.

  © (2) The writ of habeas corpus shall not extend to a prisoner unless-
      He is in custody for an act done or omitted in pursuance of an Act of
      Congress, or an order, process, judgment or decree of a court or judge
      Of the United States;

  (3) He is in custody in violation of the Constitution or laws or treaties of
      the United States;"

28 USC 2243 ISSUANCE OF WRIT; RETURN; HEARING; DECISION:
  " A Court, Justice, or Judge entertaining an application for writ of habeas
      corpus shall forthwith award the writ or issue an order directing the
      Respondent to show cause why the writ should not be granted, unless it
      Appears from the application that the applicant or person detained is not
      Entitled thereto.

      The Court shall summarily hear and determine the facts, and dispose of
      The matter as law and justice require."

## STANDARD OF REVIEW

A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the Plaintiff can prove no set of facts in support of his claim that would entitle him to relief. **CONLEY V. GIBSON , 355 U.S. 41, 45-46, 78 S. CT. 99 (1957); KOWAL V. MCI COMMUNICATIONS CORP. , 16 F. 3D 1271, 1276(D.C. CIRCUIT 1994)** The Claimant need not set out in detail the facts upon which the claim is based; to the contrary, all that is required is a short and plain statement

of the claim that will give the Defendant fair notice of what the claim is and the grounds upon which it rest. SEE:**SPARROW V. UNITED AIR LINES, INC. , 216 F.3D 1111, 1114 (D.C. CIRCUIT 2000) " FURTHER, THE COURT MUST DRAW ALL REASONABLE INFERENCES IN THE LIGHT MOST FAVORABLE TO THE NON-MOVING PARTY, AND ACCEPT AS TRUE ALL WELL PLEADED ALLEGATIONS OF FACT." SEE: PITNEY BOWES, INC. V. U.S.P.S., 27 F. SUPP. 2D 15, 19 (D.D.C. 1998)".**

The issues raised in the present case are analogous to those presented in **ASH V. U.S. PAROLE COMMISSION ,354 F.SUPP.2D I & II, civil action no. 03-2007 (RMU)(AK) and LONG V. GAINES, 173 F.SUPP.2D 35 , CIVIL ACTION NO. 01-0010(EGS)**.

## ISSUES RAISED HEREIN

Did the Defendants honor the United States District Court for the DC Circuit Compliance Plan Decree Ordered by the US District Court in 173 F. Supp.2d 35(see attached Compliance Order agreed to and submitted as Final Compliance Decree).

Did the Defendants Violate this Plaintiff's rights in reference to this Compliance Plan?

Did the Defendants violate this Plaintiff's Constitutional Protections as outlined in 354 F.Supp.2d I & II(see attached opinion by US District Court, DC at ASH Vs. US Parole Commission and the Warden of the DC Jail.?

Is the Plaintiff entitled to the redress he seeks?

## COMPLAINT

James F. Johnson was first arrested after he reported to his DC Parole Officer on August 17, 2005 by US Marshals for a warrant for violation of conditions of his parole.

Johnson was entered to the DC Jail on August 17, 2005 as a DC Parole Violator.
*10 DAYS LATER,*
Johnson first was called and appeared before the US Parole Commission to be seen for his initial Probable Cause Hearing. This Hearing was mandated to take place "within 5 days from the date of taking the Parolee into custody." *THIS HEARING WAS 8-27-05.* 9Fi

The Probable Cause Examiner found Probable Cause on only ONE Condition of the Warrant Violation and recommended reinstatement to Parole Supervision. The US/DC Parole Commission's Guidelines mandates that the Examiner, after a finding of Probable Cause (SHALL) schedule a Final Revocation Hearing "within 50 to 65 days from the date of taking the Parolee into custody ."

To:      UNITED STATES PAROLE
                 COMMISSION

                 APPEAL

JAMES F. JOHNSON
DCDC #119202
D.C. JAIL 1901 D St. S.E.
WASHINGTON, D.C. 20003

THIS APPEAL FOLLOWS AN SUCCESSION OF EVENTS
AFTER THE TAKING OF JAMES F. JOHNSON INTO CUSTODY
BY UNITED STATES MARSHALS ON A U.S. PAROLE VIOLATOR'S
WARRANT ON AUGUST 17, 2005.
      JAMES F. JOHNSON DULY REQUEST HIS REINSTATE-
MENT TO PAROLE SUPERVISION AND RETURN TO THE CUSTODY
OF THE COURT SERVICES AND OFFENDER SUPERVISION AGENCY
FOR REASONS BRIEFLY STATED AS FOLLOWS.

FILED

05 2504      DEC 3 0 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1. AFTER HIS ARREST AUGUST 17, 2005, THIS APPELLANT
WAS NOT PRESENTED FOR HIS PROBABLE CAUSE HEARING
UNTIL AFTER JOHNSON HAD BEEN HELD IN CUSTODY AT THE
D.C. JAIL FOR TEN (10) DAYS. JOHNSON NOW CONTENDS THAT
HIS RIGHTS WERE VIOLATED BY THIS COMMISSION BECAUSE
UNDER 28 C.F.R. 2.101(a) WHICH MANDATE THAT SUCH A
PROBABLE CAUSE HEARING (SHALL) BE HELD (WITHIN) FIVE (5)
DAYS OF TAKING THE PAROLEE INTO CUSTODY.

JOHNSON-119202        APPEAL, CONT. 2

2. THIS COMMISSION FAILED TO FOLLOW IT'S OWN AGENCY'S GUIDELINES AT 28 C.F.R. 2.101(a) AND LONG VS. GAINES, 173 F. Supp. 2d 35- C.A. 00-0010 (EGS) WHERE THE COMMISSION AGREED WITH A WRITTEN COMPLIANCE PLAN TO THE U.S. DISTRICT COURT, HONORABLE JUDGE E. G. SULLIVAN, OF WASHINGTON, D.C. CIRCUIT, NOVEMBER 21, 2001, WHERE THE COMMISSION (VOWED) COMPLIANCE WITH THE FIVE (5) DAY COMPLIANCE REGULATION.

3. THIS PROBABLE CAUSE HEARING WAS EVENTUALLY HELD ON SEPTEMBER 2, 2005. THE COMMISSIONS EXAMINER FOUND PROBABLE CAUSE ON ONE (1) ADMINISTRATIVE INFRACTION; "2.204-07, ASSOCIATION WITH PERSONS HAVING CRIMINAL RECORD." JOHNSON CONTEND THAT (ABSOLUTELY NO EVIDENCE, WHATEVER, WAS INTRODUCED THAT THIS JAMES F. JOHNSON WERE THE (PERSON) ACTUALLY VISITED AND (ASSOCIATED) WITH THE "PERSONS HAVING CRIMINAL RECORDS", ACTUALLY THE PHYSICAL EVIDENCE SUBMITTED, SHOWED BEYOND A DOUBT, THAT THE I.D. NUMBER SUBMITTED BY THE D.C. JAIL AS THE I.D. NUMBER #35840 AS PER THAT PERSON'S VISITOR'S BADGE I.D., HOWEVER, MY CSOSO PAROLE OFFICER A. HINTON SUBMITTED THE I.D. BADGE NUMBER HE CONFISCATED FROM ME AS BADGE I.D. NUMBER #2050, THIS WAS AGAIN BY THE CHIEF, PUBLIC DEFENDER SERVICES WHO FORWARDED A CERTIFIED COPY OF MY BADGE AND I.D. BADGE NUMBER AS 2050.

THIRDLY, NOT (ONE) PERSON STATED OR GAVE DIRECT EVIDENCE THAT I, (a) WAS PHYSICALLY (SEEN) IN ASSOCIATION WITH THE (NAMES) PRESENTED BY THE COMMISSION; (b) WAS EVER IN AN (INSTITUTION)

JOHNSON-119202          APPEAL, CONT. 3

AT ANY TIME PREVIOUSLY WITH THE NAMES OF THOSE PRESENTED; (C)
THAT NO (LIVING INDIVIDUAL) IDENTIFIED (ME) AS THE (ASSOCIATOR); (d)
NOR DID THE PAROLE OFFICER STATE NOR VERIFY, THAT HE (1) VERIFIED
THAT WE KNEW EACH OTHER WHILE IN PRISON, (2) HAD GIVEN (ME) ANY WARN-
ING THAT THE (ASSOCIATE IN QUESTION) HAS A FELONY RECORD; AND (4), THAT
(FURTHER) ASSOCIATION WOULD BE A VIOLATION OF THE RELEASE
CONDITIONS. THESE ARE THE COMMISSION'S (REQUIREMENTS) FOR
THIS INFRACTION UNDER 28 C.F.R. 2.204-07(a)?(b); THE PLAIN
LANGUAGE OF THIS GUIDELINE AT 28 C.F.R. 2.204-07 (CLEARLY) AND
UNEQUIVOCALLY) STATE (●) "UNLESS IT IS (CLEAR) THAT THE (RELEASEE) KNOWS
THAT AN ASSOCIATE HAS A FELONY RECORD, A WARRANT OR SUMMONS CHARGING
A VIOLATION OF (THIS) CONDITION ORDINARILY SHOULD NOT BE ISSUED..."
THUS, THIS INFRACTION AND (WARRANT) SHOULD (NOT) HAVE BEEN ISSUED IN THE
BEGINNING! FORTHLY, PAROLE OFFICER A. HINTON, NOR J. TABERSKI,
PRESENTED ANY EVIDENCE OR TESTIMONY OF ANY (CORROBORATED) VIOLATION
TO THE COMMISSION BY THIS PAROLEE.
4. THE EXAMINER AFTER A DETERMINATION OF PROBABLE CAUSE ON
SEPTEMBER 2, 2005, VIOLATED AND DEPRIVED THIS PAROLEE OF A
FUNDAMENTAL RIGHT WHEN THAT EXAMINER FAILED TO PROVIDE THIS
PAROLEE, AND HIS ATTORNEY THE OPPORTUNITY TO (1) EFFECTIVELY,
PREPARE, (2) FOR PAROLEE'S DEFENSE AND STRAGETY, AND (3) TO CONTACT
POTENTIAL VOLUNTARY WITNESS, WHEN THE EXAMINER WAS (BOUND)
BY THE STATUTE AT 28 C.F.R. 2.101(a)"...IF THE EXAMINER
FINDS PROBABLE CAUSE, THE EXAMINER (SHALL) SCHEDULE A FINAL
REVOCATION HEARING TO BE (HELD) WITHIN SIXTY-FIVE (65) DAYS
OF SUCH PAROLEE'S ARREST. "MOREOVER, THE COMMISSION

JOHNSON-119202          APPEAL, CONT 4.

DID AGREE TO A PLAN AS CITED IN LONG VS. GAINES, 00-0010 (EGS) U.S. DISTRICT COURT, D.C. CIRCUIT, 173 F.SUPP. 2d 35, ON NOVEMBER 12, 2001, COMMISSION'S COMPLIANCE PLAN; ITEM TWO: "FULL REVOCATION HEARINGS WILL OCCUR BETWEEN FIFTY (50) AND SIXTY-FIVE (65) DAYS FROM ARREST." FURTHER, THE PAROLEE RECEIVED A NOTICE OF ACTION FROM THE COMMISSION DATED SEPTEMBER 7, 2005 STATING "DENY RELEASE AND HOLD IN CUSTODY FOR A LOCAL REVOCATION HEARING"; HOWEVER, AGAIN, NO DATE WAS SET NOR GIVEN AND AGAIN THIS PAROLEE WAS PREJUDICED BY THE COMMISSION'S VIOLATION BECAUSE IT FAILED TO PROVIDE PRIOR NOTICE OF (1) DATE, AND (3) TIME OF A (4) TIMELY FINAL REVOCATION HEARING; BECAUSE PAROLEE WAS NOT GIVEN A FINAL REVOCATION HEARING UNTIL NOVEMBER 28, 2005 (AFTER) ONE HUNDRED AND SIX (106) DAYS HAD PASSED SINCE PAROLEE'S ARREST. 5. PAROLEE NOR HIS ATTORNEY WERE ISSUED NOR GIVEN ANY (WRITTEN) NOTICE (PRIOR) TO THE FINAL REVOCATION HEARING ON NOVEMBER 28, 2005 DEPRIVING PAROLEE OF THE CONSTITUTIONAL RIGHT TO (1) EFFECTIVELY PREPARE FOR HIS DEFENSE, (2) TO RECEIVE PRIOR WRITTEN NOTICE OF THE HEARING (3) NOR WERE ANY (ADVERSE WITNESS) CALLED BY THE COMMISSION BUT THE PAROLE OFFICER, WHO STATED IN (EACH ISSUE) THAT HE WAS AND COULD PRESENT "NOTHING BUT WHAT (SOMEONE ELSE) HAD (TOLD) HIM OR THAT HE (ASSUMED) THIS TO BE TRUE. PAROLEE CONTEND THAT 7, THE "FINAL DETERMINATION" NOTICE OF ACTION SHOULD HAVE BEEN ISSUED (NOT LATER THAN EIGHTY-SIX (86) DAYS) AFTER HIS ARREST IN VIOLATION OF COMMISSION'S OWN AGENCY GUIDELINES AND IT'S COMPLIANCE PLAN TO THE U.S. DISTRICT COURT IN 00-0010 (EGS) AT 173 F. SUPP. 2d 35 AND PREJUDICED THIS

JOHNSON -119202                    APPEAL CONT. 5

BECAUSE THESE WERE ADVERSE ACTIONS WHICH DEPRIVED THIS
PAROLE OF HIS FIFTH (5) AMENDMENT AND FOURTEENTH AMENDMENT
PROTECTIONS UNDER THE "DUE PROCESS CLAUSES" OF THE UNITED STATES
CONSTITUTION WHICH THIS COMMISSION SHOULD CURE THROUGH ORDERING
THE IMMEDIATE RELEASE OF THIS PAROLEE.

        FINALLY, PAROLEE WAS DENIED THE MOST FUNDAMENTAL
AND PROTECT RIGHT OF AN PAROLEE DURING REVOCATION PROCEEDINGS, THE
SIXTH (6) AMENDMENT OF THE U.S. CONSTITUTION "; THE RIGHT TO (1) CONFRONT
(ADVERSE) WITNESSES, AS A (2) MINIMUM (REQUIREMENT) OF "DUE PROCESS"
IN A PAROLE REVOCATION HEARING, IS THE (3) RIGHT TO (CONFRONT) AS
IT IS FOUND IN THE CONFRONTATION CLAUSE OF THE SIXTH AMEND-
MENT. U.S.C.A. CONSTITUTION AMENDMENTS 6 ⅜ 14.

        THIS PAROLEE WAS PRESENTED TO A FINAL REVOCATION HEARING
ON NOVEMBER 28, 2005, 106 DAYS AFTER HIS ARREST. THE HEARING
EXAMINER CALLED PAROLE OFFICER ANTHONY HINTON AS THE
(SOLE ADVERSARY WITNESS). MR. HINTON TESTIFIED THAT HE HAD
NO PERSONAL KNOWLEDGE OF THE CHARGE OF "ASSOCIATION WITH
PERSONS WITH CRIMINAL RECORD" BUT THAT A (FORMER) PAROLE OFFICER,
JOHN TABERSKI, HAD WRITTEN THE REPORT. MR. TABERSKI WAS NOT
SUMMON BY NEITHER (1) THE COMMISSION, (2) THE PROBABLE CAUSE
EXAMINER, (3) MR. HINTON, NOR (4), THE FINAL REVOCATION
HEARING EXAMINER, EVENTHOUGH EACH "WELL KNEW" OR SHOULD
HAVE KNOWN, THAT THE REPORT AS (WRITTEN) BY TABERSKI AND LATER
(SUBMITTED) BY HINTON, (MUST) BE CORROBORATED BECAUSE HINTON
THEN, ABSENT THE PHYSICAL PRESENCE AND TESTIMONY BY MR.
TABERSKI, COULD NOT AFFORD THE PAROLEE (1) THE RIGHT TO CONFRONT

Johnson-119202                    Appeal cont. 6

ation of the (writer/author) of the Adverse Report, and (2) the right to question, and (3) cross examine this adverse witness. In a recent U.S. District Court, D.C. Circuit, Ash vs. Reilly, 03-2007(RMU)(AK), at 354 F. Supp. 2d 1 the Court held: "Prisoner's Constitutional Due Process Right to confrontation of adverse witness was violated at Parole Revocation Hearing, where Revocation was based solely on the HEARSAY testimony of a Police Officer and a Police Report, which was ALSO based exclusively on Hear- say evidence." The Revocation Examiner then presented a (New) violation not previously given to this Parolee nor his Attorney in writing, that this Parolee "Called his daughter on August 16, 2005 "thereby violating his special condition of "No contact with his daughter or minor children." Again, Parole Officer Hinton was the (sole) Adverse witness called by the Commission and Revocation Examiner to execute this violat- tion. Again Hinton stated that he was not the author nor verifier of the violation, but rather, his Supervisor. Hinton stated that his Supervisor used a cell phone registered to a D.C. Law firm, taken from me on August 17, 2005, registered a call to my daughter named "Jasmine" on August 16, 2005, that a "Jasmine" answered the Telephone but denied having received a call from me." Parolee again fiercely objected to this type of HEARSAY Testimony, that the Commission, Revo- cation Examiner, and Parole Officer Hinton, could have summon this (1) "Jasmine" (they gave no other name or

JOHNSON-119202                    APPEAL, CONT. 7

LAST NAME GIVEN TO THIS PAROLEE) (2) THE CSOSA SUPERVISOR, AND
(3) THE OR AN REPRESENTATIVE FROM THE CELL PHONE COMPANY, OR
(4) THE TELEPHONE RECORDS; BUT NONE OF THESE COULD SWEAR
NOR GIVE EVIDENCE THAT (5) THIS PAROLEE WAS IN POSSESSION OF
THAT CELL PHONE ON AUGUST 16, 2005, THAT (6) THE "JASMINE"
TO WHICH THE SUPERVISOR TOLD HINTON THAT HE SPOKE WITH
ON THE PHONE WAS A (MINOR) OR (7) THAT SHE WAS (MY)
DAUGHTER, OR (8) THAT THEY HAD SUMMON THIS "JASMINE" TO
(9) IDENTIFY (ME) AS THE CALLER ON AUGUST 16, 2005, AND
(10) THAT THIS PAROLEE WOULD BE AFFORDED THE DUE PROCESS RIGHT
OF CONFRONTATION AND CROSS EXAMINATION OF AN ADVERSE
WITNESS, AS IT STANDS, AGAIN, THIS IS ALL UNCORROBORATED
HEARSAY STATEMENTS, AGAIN THIS PAROLEE FIERCELY OBJECTED
ONLY TO BE CUT OFF AND ADMONISHED BY THE REVOCATION
EXAMINER WHO GAVE NO REASON OR EXCUSE FOR NOT CALLING
ANY ADVERSE WITNESS TO THE FINAL REVOCATION HEARING, BUT
MERELY STATED "YOU SHOULD HAVE CALLED THEM, I GAVE YOU
THE OPPORTUNITY TO DO SO." I THEN STATED THAT IT IS NOT MY
OBLIGATION TO SUMMON ANY (ADVERSE) WITNESS AGAINST ME,
BUT THAT I HAD THE RIGHT TO CONFRONTATION AND TO CROSS EXAMINE
ANY AND (ALL) ADVERSE WITNESSESS AND IT WAS THE COMMISSION'S
OBLIGATION TO PRESENT THEM AND NOT MINES." THE REVOCATION
EXAMINER THEN DECLARED THE HEARING OVER AND IMMEDIATELY
RULED AGAINST ME WITH THE RECOMMENDATION OF 16 MONTHS IN
CARCERATION. THIS APPEALS FOLLOWS TO GIVE THE COMMISSION TO
REVERSE THIS ACTION AND RELEASE THIS PAROLEE TO PAROLE

JOHNSON-119202                APPEAL CONT. 8

SUPERVISION. SINCE THE HEARING EXAMINERS PRESENTED IN THE RECORDS NOR IN WRITING OR OTHERWISE TO THIS PAROLEE, ANY "SPECIFIC GOOD CAUSE" FOR NOT ALLOWING THIS PAROLEE TO CONFRONT THE ADVERSE WITNESSES, WHICH PAROLE HINTON STATES HE RECEIVED (ALL OF HIS REASONS) FOR REQUESTING AND HAVING THIS PAROLEE ARRESTED AND TAKEN INTO CUSTODY, THESE ENTIRE PROCEEDINGS WERE BASED UPON PURE HEARSAY, AND THE LAW OF THIS LAND STATES UNEQUIVOCALLY THAT ANY CONVICTIONS UNDER THESE CONDITIONS "CANNOT STAND!" THE U.S. SUPREME COURT IN MORRISSEY VS. BREWER, 408 U.S. 471, 92 S.CT. 2593, 33 L.Ed. 2d 484 (1972) STATED: "PAROLE REVOCATION DECISIONS (MUST) BE MADE WITH (VERIFIED FACTS) AND THAT THE EXERCISE DISCRETION WILL BE INFORMED BY AN (ACCURATE KNOWLEDGE, OF THE PAROLEE'S BEHAVIOR." PAROLEE IS ATTACHING A COPY OF BOTH ASH VS. U.S. PAROLE COMMISSION AND LONG VS. GAINES, TO VERIFY HIS POSITION OF RIGHTS VIOLATED SINCE DURING HIS U.S. PAROLE ARREST AUGUST 17, 2005 AND HIS NOT HAVING A REVOCATION HEARING UNTIL SOME 106 DAYS AFTER AND THEN THE DENIAL OF DUE PROCESS AND THE RIGHT TO CONFRONT AND CROSS EXAMINE ALL ADVERSE WITNESS AND THAT IT IS THE COMMISSION'S (OBLIGATION) TO PRESENT THEM OR GIVE SPECIFIC REASON FOR NOT. THIS PAROLEE ONLY REQUEST THE IMMEDIATE RE-INSTATEMENT TO PAROLEE SUPERVISION AND THE COMPLETE REVERSAL OF RECOMMENDATIONS OF THE REVOCATION EXAMINER, IT IS SO MADE.

　　　　IN GOD WE TRUST
James Johnson  119202          ATTACHMENTS (2)

Westlaw.

173 F.Supp.2d 35                                                    Page 1

173 F.Supp.2d 35

**(Cite as: 173 F.Supp.2d 35)**


**H**

**Motions, Pleadings and Filings**

United States District Court,
District of Columbia.
Virgil J. LONG, et al., Plaintiffs,
v.
Michael J. GAINES, et al., Defendants.
**No. 01-0010 (EGS).**

Nov. 21, 2001.

Parolees brought action challenging United States
Parole Commission's regulations governing parole
revocation procedures. The District Court, Sullivan,
J., 167 F.Supp.2d 75, held that the revocation
procedures were unconstitutional and withheld the
entry of final judgment, pending the submission of a
proposed compliance plan by defendants.
Defendants submitted a proposed compliance plan
and parolees filed objections to the plan. The
District Court, Sullivan, J., held that proposed
procedures complied with due process.

Ordered accordingly.

West Headnotes

**Constitutional Law** ⟜272.5
92k272.5 Most Cited Cases

**Pardon and Parole** ⟜77.1
284k77.1 Most Cited Cases
Parole revocation procedures, established by Parole
Commission in response to finding that existing
procedures were unconstitutional, complied with
due process, where the plan included provisions
requiring a probable cause hearing no later than five
days after parolee's arrest, full revocation hearings
to occur between 50 and 65 days from arrest,
disclosure of all evidence it intended to consider in

determining whether a violation occurred, and a
final determination and notice of action to be given
to the parolee no later than 86 days after arrest.
U.S.C.A. Const.Amend. 5.
**\*35** Laura L. Rose, D.C. Public Defender Service,
Washington, DC, Douglas W. Baruch, Steven
Clifford Parker, Fried, Frank, Harris, Shriver &
Jacobson, Washington, DC, for plaintiffs.

Michael Anthony Humphrey, U.S. Attorney's
Office, Washington, DC, for defendants.

**REMEDIAL ORDER AND JUDGMENT**

SULLIVAN, District Judge.

On September 27, 2001, this Court entered a
comprehensive Memorandum Opinion and Order
setting forth findings of fact and conclusions of law
holding that the United States Parole Commission's
parole revocation regulations, practices, and
procedures violate the requirements of the Due
Process Clause of the Fifth Amendment of the
United States Constitution as set forth by the
Supreme Court in *Morrissey v. Brewer,* 408 U.S.
471, 484-86, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).
At that time, the Court withheld the entry of final
**\*36** judgment, pending the submission of a
proposed compliance plan by defendants. On
October 12, 2001, defendants submitted a proposed
plan for complying with the mandates of the
Constitution and this Court's Memorandum Opinion
and Order. Plaintiffs subsequently filed objections
to the plan, and on November 13, 2001, the Court
held a hearing relating to the scope of relief to be
ordered. In order to fully respond to the issues
raised at the November hearing, the parties
submitted further briefs and proposed orders.

Upon consideration of the defendants' proposed
compliance plan, the plaintiffs' objections thereto,
the parties' proposed orders, the arguments of
counsel at the November 13, 2001 hearing, and in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

173 F.Supp.2d 35

173 F.Supp.2d 35

**(Cite as: 173 F.Supp.2d 35)**

light of the Court's September 27, 2001 Opinion and Order, the Court has determined that it is appropriate to grant final judgment and enter a permanent injunction against defendants. Furthermore, the Court will retain jurisdiction over this matter to ensure that defendants comply with the requirements of the Constitution and this Court's Memorandum Opinion and Order.

**The U.S. Parole Commission's Compliance Plan**
On October 12, 2001, defendants submitted an ambitious plan for complying with this Court's Memorandum Opinion and Order and the requirements of the Constitution. The plan sets forth new procedures to ensure that parole revocation proceedings will occur in a timely fashion and will comport with due process of law. Specifically, defendants propose the following:
• Parolees arrested for alleged violations will receive a probable cause hearing no later than five days after the parolee's arrest.
• Full revocation hearings will occur between 50 and 65 days from arrest.
• Prior to the revocation hearing the Commission will disclose to the parolee all the evidence it intends to consider in determining whether a violation occurred and whether to revoke parole.
• A final determination and notice of action will be given to the parolee no later than 86 days after arrest.
The Plan includes other procedural mechanisms designed to protect the rights of parolees. Plaintiffs do not object to these substantive requirements proposed by defendants.

The Court is satisfied that the U.S. Parole Commission's Plan sets forth procedures that comply with due process as explained by *Morrissey v. Brewer.* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The Court once again commends defendants for recognizing and accepting that its current procedures violate parolees' constitutional rights, and for submitting a plan that attempts to remedy the substantial problems that the Commission has faced and continues to face.

**Oversight and Compliance**

In light of the Parole Commission's willingness to assist the Court in formulating a proposal to comply with the Court's Memorandum Opinion and Order, the Court is cautiously optimistic that the Parole Commission will soon fully implement its proposed Plan and comply with the requirements of the Constitution. However, the lessons of past attempts at institutional reform weigh heavily against the easy implementation of change at this institution. Furthermore, as plaintiffs correctly point out, the task of remedying the pervasive and long-standing constitutional violations by the Commission detailed in the Court's Memorandum Opinion and Order, will be a challenging one in light of the Commission's current budget and resource constraints.

*37 The Court is confident that the Commission will rise to meet this challenge. However, it is necessary for the Court to retain jurisdiction to monitor the Commission's progress and ensure that the present constitutional defects are remedied. The parties agree that a certain period of continued oversight by the Court is appropriate. The parties disagree, however, as to when that continued jurisdiction should be terminated.

Defendants have suggested that the Court retain jurisdiction to monitor the Commission's compliance for six months from the date of this Order. Plaintiffs, on the other hand, argue that the Court should retain jurisdiction for six months from the time that the Commission demonstrates full compliance with the requirements of the Constitution.

Rather than set a deadline for compliance at this point, the Court will monitor the Commission's progress for at least the next eight months. The Commission shall submit monthly progress reports to the Court and to plaintiff's attorneys. At the end of this eight-month time period, the Court will hear from the parties as to the status of the Commission's compliance with the Plan and this Court's Order.

**Conclusion**
Having previously held that the U.S. Parole Commission's regulations, practices, and procedures

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

173 F.Supp.2d 35

173 F.Supp.2d 35

**(Cite as: 173 F.Supp.2d 35)**

with respect to parole revocation violate the Fifth Amendment of the United States Constitution, it is hereby

**ORDERED** that the Clerk of the Court enter **FINAL JUDGMENT** against defendants and in favor of plaintiffs; it is

**FURTHER ORDERED** that defendants are permanently enjoined to implement and comply with the Plan submitted to the Court on October 12, 2001, a copy of which is attached to this Order; it is

**FURTHER ORDERED** that implementation of the Plan shall commence immediately; it is

**FURTHER ORDERED** that defendants shall promulgate amendments to their regulations as necessary to bring those regulations into conformity with the Plan, this Order, the Order of September 27, 2001, and the United States Constitution, no later than 60 days from the date of this Order; it is

**FURTHER ORDERED** that defendants shall serve on the Court and on plaintiffs' counsel any proposed amendments to the Commission's regulations; it is

**FURTHER ORDERED** that plaintiffs shall have two weeks following the Commissions' proposal of any amended regulations to file with the Court any objections based on lack of compliance with this Court's Order of September 27, 2001 or with the Commission's proposed compliance Plan; it is

**FURTHER ORDERED** that defendants shall submit monthly reports commencing 30 days after the entry of this Order detailing the Commission's implementation of the Plan and compliance, or lack thereof, with the Plan's deadlines for probable cause determinations, revocation hearings, and the issuance of final notices of action; it is

**FURTHER ORDERED** that a hearing on compliance will be held on **Friday, July 19, 2002** at **10:00 a.m.** in **Courtroom One**; it is

**FURTHER ORDERED** that defendants shall file

with the Court an overall compliance status report and argument for continuation or termination of oversight no later than **Monday, May 20, 2002.** Plaintiffs shall file a response by later than **Friday, June 21, 2002.** Defendants shall file a reply by no later than **Friday, July *38 5, 2002.** These deadlines shall not be extended; it is

**FURTHER ORDERED** that the parties may apply to the Court, via motion properly served on all parties, for additional hearings regarding the adequacy of the monthly reports to the Court or the sufficiency of the regulations and practices promulgated by the Commission to implement this Order; it is

**FURTHER ORDERED** that the Court shall retain jurisdiction to enforce the terms of this injunction until further order of the Court.

**IT IS SO ORDERED.**

173 F.Supp.2d 35

**Motions, Pleadings and Filings (Back to top)**

• 1:01CV00010 (Docket)

(Jan. 03, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

354 F.Supp.2d 1

354 F.Supp.2d 1, 65 Fed. R. Evid. Serv. 1246

**(Cite as: 354 F.Supp.2d 1)**

▷

**Motions, Pleadings and Filings**

United States District Court,
District of Columbia.
Walter **ASH**, Plaintiff,
v.
Edward F. **REILLY**, Jr., Cranson J. Mitchell, John
Simpson, In their official
capacities as Commissioners of the United States
Parole Commission
Odie Washington, In his official capacity as
Director of the District of
Columbia Department of Corrections
Fred Figueroa, In his official capacity as Warden of
the Correctional Treatment
Facility, Defendant.
**Civil Action No. 03-2007 (RMU)(AK).**

Dec. 7, 2004.

**Background:** District of Columbia prisoner filed
petition for writ of habeas corpus, challenging his
detention on the basis that his rights were violated
at his parole revocation hearing.

**Holdings:** The District Court, Alan Kay, United
States Magistrate Judge, held that:
(1) prisoner was not required to first exhaust his
remedies in the Superior Court of District of
Columbia;
(2) fact that prisoner listed warden of prior
treatment facility as respondent on habeas petition
did not divest District Court of jurisdiction; and
(3) prisoner's constitutional due process right to
confrontation of adverse witnesses was violated at
parole revocation hearing.
Petition granted.

West Headnotes

**[1] Habeas Corpus ☞279**
197k279 Most Cited Cases
District of Columbia prisoner seeking habeas relief
from parole revocation decision was not required to
first exhaust his remedies in the Superior Court of
District of Columbia; review by United States
Parole Commission was tantamount to judicial
scrutiny. 28 U.S.C.A. § 2241; D.C. Official Code,
2001 Ed. § 16-1901.

**[2] Habeas Corpus ☞662.1**
197k662.1 Most Cited Cases
Traditionally, a federal court has jurisdiction to
entertain a petition for habeas corpus relief only if
directed against the warden of the facility where the
prisoner is being held, not the Attorney General or
some other remote supervisory official. 28
U.S.C.A. § 2254.

**[3] Habeas Corpus ☞640**
197k640 Most Cited Cases

**[3] Habeas Corpus ☞662.1**
197k662.1 Most Cited Cases
When the government moves a habeas petitioner
after he properly files a petition naming his
immediate custodian, the District Court retains
jurisdiction over the habeas proceeding and may
direct the writ to any respondent within its
jurisdiction who has legal authority to effectuate the
petitioner's release. 28 U.S.C.A. §§ 2241, 2254.

**[4] Habeas Corpus ☞640**
197k640 Most Cited Cases
Fact that prisoner incarcerated at a federal
penitentiary in Virginia to serve out remainder of
his District of Columbia (D.C.) sentence for
possession with intent to distribute cocaine upon
revocation of his parole listed warden of D.C.
treatment facility as respondent on habeas petition
did not divest District Court of jurisdiction over
habeas petition, where prisoner was detained at
treatment facility at time petition was filed, and was

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

354 F.Supp.2d 1                                                    Page 2

354 F.Supp.2d 1, 65 Fed. R. Evid. Serv. 1246

(Cite as: 354 F.Supp.2d 1)

transferred to Virginia penitentiary during pendency of habeas proceeding. 28 U.S.C.A. § 2241.

**[5] Constitutional Law ☞272.5**
92k272.5 Most Cited Cases
Although a defendant at a parole revocation hearing does not benefit from the full panoply of rights available to a defendant in a criminal prosecution, he is entitled to certain minimum requirements of due process. U.S.C.A. Const.Amend. 14.

**[6] Constitutional Law ☞272.5**
92k272.5 Most Cited Cases
At a minimum, the due process rights afforded to a defendant at a parole revocation hearing include: (1) written notice of the claimed violations of parole, (2) disclosure to the parolee of evidence against him, (3) opportunity to be heard in person and to present witnesses and documentary evidence, (4) the right to confront and cross-examine adverse witnesses; (5) a neutral and detached hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers, and (6) written statements by the fact finders as to the evidence relied on and reasons for revoking parole. U.S.C.A. Const.Amends. 6, 14.

**[7] Constitutional Law ☞272.5**
92k272.5 Most Cited Cases
Whether a parole revocation hearing meets the minimum due process requirements is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial. U.S.C.A. Const.Amend. 14

**[8] Criminal Law ☞662.3**
110k662.3 Most Cited Cases
A criminal defendant in a parole revocation hearing is entitled to Sixth Amendment confrontation rights. U.S.C.A. Const.Amend. 6.

**[9] Pardon and Parole ☞77.1**
284k77.1 Most Cited Cases
Parole revocation hearings should not be equated with criminal prosecutions and defendants in the former are not entitled to the full set of rights enjoyed by defendants in the latter.

**[10] Constitutional Law ☞272.5**
92k272.5 Most Cited Cases
The right to confront adverse witnesses, as a minimum requirement of due process in a parole revocation hearing, is the right to confrontation as it is found in the Confrontation Clause of the Sixth Amendment. U.S.C.A. Const.Amends. 6, 14.

**[11] Constitutional Law ☞272.5**
92k272.5 Most Cited Cases

**[11] Criminal Law ☞662.3**
110k662.3 Most Cited Cases
Prisoner's constitutional due process right to confrontation of adverse witnesses was violated at parole revocation hearing, where revocation was based solely on the hearsay testimony of a police officer and a police report, which was also based exclusively on hearsay evidence. U.S.C.A. Const.Amends. 6, 14.
*2 Olinda Moyd, Public Defender Service for the District of Columbia, Washington, DC, for Petitioner.

Daniel M. Cisin, Margaret J. Chriss, U.S. Attorney's Office, Washington, DC, for Respondents.

### MEMORANDUM ORDER

ALAN KAY, United States Magistrate Judge.

Before the Court is the Petitioner's Amended Petition for a Writ of Habeas Corpus [5] brought under 28 U.S.C. § 2241 and 2243, the Respondent's Opposition [8] and the Petitioner's Reply [9] and the Respondent's Response to the Petitioner's Reply [11]. The Petitioner is challenging his present detention on the basis that his rights were violated at an August 13, 2003 parole revocation hearing at which time his parole was revoked and his current sentence of 102 months was imposed.

**I. FACTUAL BACKGROUND**

The Petitioner, Wilbur Ash [FN1] is currently

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

354 F.Supp.2d 1

Page 3

354 F.Supp.2d 1, 65 Fed. R. Evid. Serv. 1246

(Cite as: 354 F.Supp.2d 1)

being incarcerated at the Lee United *3 States Penitentiary in Bennington Gap, Virginia. Ash first petitioned for habeas relief on September 26, 2003 at which time he was being incarcerated at the Central Treatment Facility in Washington, D.C. An Amended Writ of Habeas relief was filed on September 3, 2004.

> FN1. Although the original caption to this case named the petitioner as Walter Ash, the parties are in agreement that the Petitioner's correct name is Wilbur Ash.

Wilbur Ash was sentenced on March 3, 1995 in the Superior Court for the District of Columbia to 5-to-15 years for possession with intent to distribute cocaine. On March 8, 2001, Mr. Ash was released on parole. On April 4, 2002, Ash was charged in Baltimore, Maryland, with attempted murder, assault in the first and second degree, and carrying a dangerous and deadly weapon. The charges against him arose from events that are alleged to have occurred on April 1, 2002. Although all of the charges against Mr. Ash were dismissed on June 12, 2003 by the Circuit Court for Baltimore City, Mr. Ash was detained by the Parole Commission for alleged violations of his parole. A probable cause hearing was held on June 20, 2003, at which time the hearing examiner made a no probable cause finding on technical violations and the attempted murder charge, but found probable cause with regard to the three assault counts. A parole revocation hearing was thus scheduled.

At the August 13, 2003 parole revocation hearing, Officer Ronald Shepke, the author of the police report of the incident, appeared as the sole witness to testify against Mr. Ash for the Commission. Jerome Simms, a witness for the Petitioner, and the alleged crime victim, did not appear at the hearing despite having been subpoenaed to testify. The only witnesses who testified at the parole revocation hearing were Mohammed Gassama, the Petitioners Court Supervision Officer, and Officer Shepke.

Officer Shepke testified that he had no personal knowledge of what had happened. (Tr. at 21, 23, 27, and 28.) The Officer did testify to having seen

the Petitioner leaving the residence where the incident was alleged to have taken place, and that he saw the Petitioner make a throwing motion and apparently toss an object over a fence. (Tr. at 18.) After the Petitioner was apprehended, Officer Shepke retrieved a box cutter from the vicinity. (Id.)

The only evidence presented at the parole revocation hearing regarding the alleged 'cutting' was based on Officer Shepke's police report, which was based solely on hearsay statements made by four or five alleged witnesses to the officer following the incident. (Tr. at 20, 22.) These witnesses were not brought to testify at the parole hearing and there is a dispute between the parties as to whether their identities were shared with the Petitioner and his counsel in advance of the hearing. Additionally, the Parole Commission admitted to the Defendant that there were two other adverse witnesses but that the Commission was not calling them to testify at the revocation hearing. (Motion at 19.) There was not a good cause finding made as to why these two witnesses were not called to testify.

Prior to, and immediately following Officer Shepke's testimony, defense counsel objected to the officer's testimony regarding facts about which he did not have personal knowledge, and based solely on statements told to him by eyewitnesses not present at the revocation hearing. Ash's counsel claimed that the officer's testimony violated Mr. Ash's Sixth and Fourteenth Amendment right to confront and cross-examine adverse witnesses. (Tr. at 34-35, 44.)

The hearing officer found against Mr. Ash on all counts. This decision was based on the testimony of Officer Shepke, the arrest report (which contained the hearsay statements of alleged eyewitnesses), and hospital records relating to *4 treatment of the victim to the incident. (See Petition at 9.) Based on these findings, the hearing officer recommended that Mr. Ash be incarcerated until the expiration of his sentence, approximately 102 months. (Tr. at 52.)

The recommendation of the hearing officer resulted in the revocation of Mr. Ash's parole on September

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

354 F.Supp.2d 1                                                                                              Page 4

354 F.Supp.2d 1, 65 Fed. R. Evid. Serv. 1246

(Cite as: 354 F.Supp.2d 1)

4, 2003 and he was sentenced as recommended.

## II. LEGAL ANALYSIS

### A. Jurisdictional Analysis

Before this Court can consider the merits of the Petitioner's claim, the Court must determine whether it has jurisdiction to entertain said petition. *Ex Parte McCardle,* 74 U.S. (7 Wall.) 506, 19 L.Ed. 264 (1868). The current action has been brought under 28 U.S.C. §§ 2241 and 2243. 28 U.S.C. § 2241(a) states that "[w]rits of habeas corpus may be granted by ... the district courts and any circuit judge within their respective jurisdiction." The Respondent argues that the present petition should have been brought under 28 U.S.C. § 2254, the habeas provision applicable to criminal defendants detained pursuant to a judgement of a state court. (Opposition at 1.) § 2254 states that relief may be sought by "a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the constitution or laws or treaties of the United States." There is no dispute that the district court would have jurisdiction over this case if filed under § 2254. Thus, the Respondent's claims are based on a pure technicality. The Respondent does not contest the court's jurisdiction to consider Mr. Ash's habeas claim, it is only contesting the statutory provision used by the Petitioner to invoke this Court's jurisdiction. Although a technicality, this argument warrants careful consideration. The Respondent cites *Madley v. United States Parole Commission,* 278 F.3d 1306 (D.C.Cir.2002) for its assertion that a prisoner held pursuant to a state court action, if he wishes to seek relief in the federal courts, must do so pursuant to 28 U.S.C. § 2254, not §§ 2241 nor 2243. The government's reliance on *Madley* for this broad assertion is incorrect. In *Madley,* the Court of Appeals considered the limitations of habeas review by appellate courts where no certificate of appealability (COA) had been issued by the trial court. *See Id.,* 278 F.3d at 1308. The Court's decision does not affect the district court's ability to grant habeas relief for state court defendants under § 2241. In fact, this circuit has held that individuals incarcerated pursuant to action by the Superior Court for the District of

Columbia may seek federal habeas relief pursuant to § 2241 despite a state court habeas avenue for relief--D.C.Code § 16-1901. *Blair-Bey v. Quick,* 151 F.3d 1036, 1042- 1047 (D.C.Cir.1998).

[1] The government also challenges the Petitioner's current action on the ground that he has not exhausted his state court remedies, which the government asserts is a prerequisite to federal court habeas review. (Opposition at 2.) The Respondent's position is belied by the history and purpose of the exhaustion requirement. *See Gant v. Reilly,* 224 F.Supp.2d 26 (D.D.C.2002). In the present case, as with *Gant,* the Petitioner is challenging actions by the United States Parole Commission, a federal agency. In finding that a review of actions by the United States Parole Commission is tantamount to judicial scrutiny of a federal entity, "this court is compelled to conclude that it is the proper forum to exercise jurisdiction over this particular habeas corpus petition." *Id.,* 224 F.Supp.2d at 40. This Court finds no reason to depart from the well reasoned opinion in *Gant,* and hold that the Petitioner need not pursue his claim first in the *5 Superior Court of the District of Columbia as the Respondent urged.

[2][3][4] Lastly, although not argued by the parties, the Court considers whether the Court has jurisdiction to entertain this petition given that the Defendant is no longer in the territorial jurisdiction of this Court. Traditionally, a federal court has jurisdiction to entertain a petition for habeas corpus relief only if directed against the "warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla,* --- U.S. ---, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004)(internal citations omitted). In the present case, the immediate custodian of Wilbur Ash is the warden of the Lee United States Penitentiary in Bennington Gap, Virginia. One important exception to this 'immediate custodian rule' is that "when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

354 F.Supp.2d 1                                                                                     Page 5

354 F.Supp.2d 1, 65 Fed. R. Evid. Serv. 1246

**(Cite as: 354 F.Supp.2d 1)**

prisoner's release." *Id.,* 124 S.Ct. at 2721, *Ex Parte Endo,* 323 U.S. 283, 65 S.Ct. 208, 89 L.Ed. 243 (1944). The Petitioner has listed Fred Figueroa, the warden of the Correctional Treatment Facility in Washington, D.C. as one Respondent. At the time this petition was filed, the Petitioner was being held at CTF. Thus, this petition was directed at the Petitioner's immediate custodian and, per *Ex Parte Endo,* this Court retains jurisdiction despite the Petitioner having been moved to another jurisdiction.

### B. Petitioner's Confrontation Claim

The Petitioner brought the current action alleging that his rights to confront and cross-examine adverse witnesses at the parole revocation hearing had been violated. (Motion at 10.) Factually, there is no dispute. The Petitioner's parole was revoked based solely on hearsay testimony contained in a police report.

In assessing the Petitioner's claim, the Court finds it beneficial to begin with an analysis of the three primary cases that guide the analysis.

#### (1) Morrissey v. Brewer

The seminal case discussing the rights of criminal defendants in parole revocation hearings is *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In *Morrissey,* the petitioners claimed that because their parole was revoked without a hearing, they were deprived of due process. *Id.* Because the petitioners were state criminal defendants, the central question for the Court was "whether the Due Process Clause of the Fourteenth Amendment requires that a State afford an individual some opportunity to be heard prior to revoking his parole." *Id.,* 408 U.S. at 472, 92 S.Ct. 2593. Thus the Court had two distinct issues to resolve. The first was to define the rights afforded criminal defendants in parole revocation hearings and the second was to determine whether state criminal defendants are entitled to the same constitutional protections as federal defendants via the Due Process Clause of the Fourteenth Amendment.

[5][6] Although a defendant at a parole revocation

hearing does not benefit from the full panoply of rights available to a defendant in a criminal prosecution, nonetheless, he is entitled to certain minimum requirements of due process. *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). At a "minimum," these rights include: "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and *6 cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) written statements by the fact finders as to the evidence relied on and reasons for revoking parole." *Id.*

The Court in *Morrissey* is explicit that the "right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)" is a "minimum requirement of due process" to be afforded criminal defendants in parole revocation hearings. *Morrissey,* 408 U.S. at 489, 92 S.Ct. 2593.

These "few basic requirements," the Court stated, "should not impose a great burden on a State's parole system." *Id.,* 408 U.S. at 490, 92 S.Ct. 2593.

[7] Although a criminal defendant at a parole revocation hearing is entitled to the rights quoted above, the Court cautioned that "there is no thought to equate this second stage of a parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Id.,* 408 U.S. at 489, 92 S.Ct. 2593. Thus, a reasonable reading of *Morrissey* is that criminal defendants in parole revocation proceedings are entitled to certain rights equal to, or perhaps more, but certainly not less, than the rights listed explicitly in *Morrissey.*

#### (2) Crawford v. Jackson

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

354 F.Supp.2d 1

354 F.Supp.2d 1, 65 Fed. R. Evid. Serv. 1246

**(Cite as: 354 F.Supp.2d 1)**

Page 6

In *Crawford v. Jackson,* 323 F.3d 123 (D.C.Cir.2003), the question for the Court was whether the use of an uncorroborated police investigative report containing hearsay evidence in a parole revocation hearing violated a criminal defendant's due process rights. Citing *Morrissey,* the Court stated that "[r]eliance on hearsay in parole revocation proceedings is not per se impermissible." *Crawford v. Jackson,* 323 F.3d at 128. To be admissible, however, the Court held that the evidence had to be sufficiently reliable. *Id.* Among the factors that the Court considered as indicia of reliability include: (1) level of detail, (2) whether the defendant's own testimony corroborated parts of the report, (3) whether the report was corroborated by factors both internal and external to the report, and (4) whether the defendant had an opportunity at the hearing to contest the hearsay with contradictory testimony and if he had failed to do so. *Id.,* 323 F.3d at 130. In adopting the rationale of several other federal circuits, the Court held that courts generally should examine "the reliability of the particular hearsay evidence, condemning reliance on it when the court reaches a negative evaluation." *Id.* at 129.

Thus, were this Court to follow the holding in *Crawford v. Jackson,* the Court would need to assess the reliability of the Officer Shepke's police report to determine whether its introduction at the parole revocation hearing violated the Petitioner's due process rights.

### (3) *Crawford v. Washington*

In *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Supreme Court questioned whether a state court's use of judicially determined 'reliable' hearsay evidence in a criminal prosecution violated the Confrontation Clause. The Court held in the affirmative, and in so doing, abandoned the 'reliability' tests established by the lower federal and state courts. *See Id.,* 124 S.Ct. at 1371-1372. The Court's decision applied specifically to cases in which the criminal defendant was entitled to the protections of the Sixth Amendment's Confrontation Clause and did not consider its decision vis-a-vis parole *7 revocation proceedings. In defining the subjective, and often

conflicting conclusions made by various Courts in assessing reliability, the Court noted that some courts have found hearsay testimony to be particularly reliable because it was "detailed" while other courts have found it particularly reliable because it was "fleeting." *Id.,* 124 S.Ct. at 1371.

Furthermore, the Court expressly overruled *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), stating "reliability is an amorphous, if not entirely subjective, concept." *Crawford v. Washington,* 124 S.Ct. at 1371. "The unpardonable vice of the *Roberts* test," according to the Court, "is not its unpredictability, but its demonstrated capacity to admit core testimonial statements that the Confrontation Clause plainly meant to exclude." *Id.* The Court further stated that the "constitution prescribes a procedure for determining the reliability of testimony in criminal trials, and we, no less than the state courts, lack authority to replace it with one of our own devising." *Id.*

### (4) *Analysis*

The federal courts are split with regard to whether *Crawford v. Washington* is binding precedent for parole revocation hearings. *See United States v. Jarvis,* 94 Fed.Appx. 501 (9th Cir.2004)(holding that the right to confrontation and thus *Crawford v. Washington,* applied to parole revocation hearings); *United States v. Martin,* 382 F.3d 840 (8th Cir.2004)(holding that the Sixth Amendment right to confrontation did not exist in parole revocation hearings); *See also United States v. Taveras,* 380 F.3d 532 (1st Cir.2004); *See also United States v. Barraza,* 318 F.Supp.2d 1031 (S.D.Cal.2004). Most recently, the 2nd Circuit held that *Crawford v. Washington* does not apply to parole revocation hearings because by its text, the Sixth Amendment is limited to "criminal prosecutions." *United States v. Aspinall,* 389 F.3d 332 (2d Cir.2004). That Court also cited to *Morrissey* for the proposition that " 'revocation of parole is not part of a criminal prosecution." *Id.*

[8] After a careful review of the previous cases, as well as *Morrissey, Crawford v. Jackson,* and *Crawford v. Washington,* this Court holds that a criminal defendant in a parole revocation hearing is

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

`354 F.Supp.2d 1`                                              Page 7

354 F.Supp.2d 1, 65 Fed. R. Evid. Serv. 1246

**(Cite as: 354 F.Supp.2d 1)**

entitled to confrontation and that the contours of that right are dictated by the Supreme Court's recent formulation in *Crawford v. Washington*. This determination is made for the following reasons.

### (a) Reconciling *Morrissey* with *Crawford v. Washington*

[9] *Morrissey* states both that a defendant in a parole revocation hearing is entitled to confront adverse witnesses and that "the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Morrissey*, 408 U.S. at 489-490, 92 S.Ct. 2593. These two statements must be reconciled in light of the Court's more recent holding in *Crawford v. Washington*. A parole revocation hearing, according to *Morrissey*, includes the right to confront and cross-examine adverse witnesses, which, according to *Crawford v. Washington*, cannot include the introduction of hearsay testimony, regardless of its judicially determined reliability, a procedure permitted by *Morrissey* (the process should allow for "other material that would not be admissible in an adversary criminal trial." *Morrissey*, 408 U.S. at 490, 92 S.Ct. 2593). In fact, the Court expressly declares affidavits as a type of testimonial evidence subject to a right to confrontation. *Crawford v. Washington*, 124 S.Ct. at 1364. The only unequivocal pronouncement regarding parole revocation hearings is that the right to confrontation is a minimum *8 requirement of due process. *Morrissey*, 408 U.S. at 489, 92 S.Ct. 2593. *Morrissey* does state, however, that parole revocation hearings should not be equated with criminal prosecutions and that defendants in the former are not entitled to the full set of rights enjoyed by defendants in the latter. 408 U.S. at 489, 92 S.Ct. 2593. ("We do not reach or decide the question whether the parolee is entitled to the assistance of retained counsel or to appointed counsel if he is indigent.") This caveat follows immediately after an exposition of the minimum rights that *must* be afforded a criminal defendant in parole revocation hearings. *Id.* Thus, the Court is calling attention to the difference between criminal prosecutions and parole revocation proceedings not to cast doubt upon the rights it explicitly held are applicable in both, but to suggest that there may be other rights (e.g., to appointed counsel if indigent) or procedural safeguards not discussed, which may or may not be equally available. To use the language differentiating the two types of criminal proceedings as an invitation to disregard *Morrissey's* previous exposition of the "minimum requirements of due process" would be incongruous.

### (b) Confrontation: Sixth Amendment vs. Fourteenth Amendment

The circuits that have held that *Crawford v. Washington* does not affect the rights provided to criminal defendants in parole revocation proceedings base their decision on a distinction between confrontation borne from the Sixth Amendment (and clearly the subject of *Crawford v. Washington* ) and confrontation as a component of "due process" as expressed in *Morrissey v. Brewer*.

One such circuit characterized the due process right to confrontation expressed in *Morrissey* as a "limited due process right to confront and cross-examine adverse witnesses." *Martin*, 382 F.3d at 844. In distinguishing confrontation afforded criminal defendants in parole hearings, the federal District Court for the Southern District of California has stated that "the right to confrontation in a supervised release revocation hearing is a due process, not a Sixth Amendment right." *Barraza*, 318 F.Supp.2d at 1033. According to that Court, the "Sixth Amendment Confrontation Clause by its own terms only applies to 'criminal prosecutions' " and that because *Morrissey* "specifically noted that 'the revocation of parole is not part of a criminal prosecution,' it is difficult to conclude that *Morrissey* was a Sixth Amendment case." *Id.*, 318 F.Supp.2d at 1035.

[10] Acknowledging the context in which *Morrissey* was decided, a review of a state court proceeding, this Court cannot agree with these decisions. *Morrissey* discussed confrontation in the context of 'due process' because that case concerned state court action, and thus, any rights applicable to the defendants in that case would exist solely via incorporation of constitutional rights through the Due Process clause of the Fourteenth Amendment

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

354 F.Supp.2d 1

354 F.Supp.2d 1, 65 Fed. R. Evid. Serv. 1246

(Cite as: 354 F.Supp.2d 1)

Page 8

and not because the Court envisioned an alternative form of confrontation different from that referenced in the Sixth Amendment. The Court has expressly incorporated the rights provided in the Sixth Amendment to the states via the Due Process clause of the Fourteenth Amendment. *Faretta v. California*, 422 U.S. 806, 818, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)(holding that because the Sixth Amendment provides rights that are "basic to our adversary system of criminal justice, they are part of the 'due process of law' that is guaranteed by the Fourteenth Amendment to defendants in the criminal court of the States."). These rights, the Court stated, include the right to confrontation. *Id.* Therefore, the right to confront adverse witnesses, expressed as a minimum requirement of due process in *Morrissey* can mean only the *9 right to confrontation as it is found in the Confrontation Clause of the Sixth Amendment.

### (c) Alternative Right to Confrontation

Even if the holding in *Crawford v. Washington* does not apply necessarily to parole revocation hearings via *Morrissey*, this Court would need to define 'confrontation' as stated by the *Morrissey* court as a minimum requirement of due process. The cases which hold that Sixth Amendment confrontation doesn't apply do not discuss, in light of their decision, the contours of the right to "confront and cross-examine adverse witnesses" as stated in *Morrissey*. *See United States v. Aspinall*, 389 F.3d 332, *See United States v. Martin*, 382 F.3d 840, *See United States v. Barraza*, 318 F.Supp.2d 1031.

In *Crawford v. Washington*, the Court discusses at length the etymology of the right to confrontation and restates its importance in the fundamental fairness of criminal trials in our nation. *See generally Crawford*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177. Nowhere in that thorough review does the Court mention, let alone hint the existence of multiple types of, or alternative definitions for, confrontation. In fact, the Court begins with a detailed discussion of the right to confrontation as it existed at common law. *Id.*, 124 S.Ct. at 1359-1363. If this Court were to formulate an alternative right to confrontation, one based on notions of 'due

process' rather than borne from the Sixth Amendment, this Court would inevitably turn to the same sources as cited in *Crawford v. Washington* and would no doubt end with the same notion of confrontation. In short, this Court cannot conceive of a more thorough, or accurate accounting of the scope and meaning of confrontation than that expounded in *Crawford v. Washington*, even assuming it was appropriate for it to do so.

### (d) Judicial Determinations of Reliability

Were this Court to determine that *Crawford v. Washington* did not apply, the Court still could not follow *Crawford v. Jackson* because, while not being expressly overruled, its underlying rationale has been undermined. When the Supreme Court eschewed admissibility of hearsay evidence based on the imprecision of judicially created tests for reliability, it cast doubt upon the legitimacy of the reliability test set forth in *Crawford v. Jackson*. Indeed one of the factors relied upon by this Circuit as an indicium of reliability was the level of detail of the hearsay statement, (*Crawford v. Jackson*, 323 F.3d at 130) a practice flatly rejected in *Crawford v. Washington*. Thus, although not expressly overruled, the analysis and precedential value of *Crawford v. Jackson* is in doubt. Furthermore, the Court stated that parole revocation decisions must be made with "verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." *Morrissey*, 408 U.S. at 484, 92 S.Ct. 2593. It is difficult to imagine how this can be achieved by an "amorphous" and "unpredictable" test of reliability. *See Crawford v. Washington*, 124 S.Ct. at 1370. For this Court to assess the police officer's hearsay report based on "reliability factors" set forth in *Crawford v. Jackson*, would be tantamount to this Court ignoring the binding nature, constitutional analysis and utter rebuke of "reliability" factors, set forth in *Crawford v. Washington*.

### III. CONCLUSION

For the reasons stated above, this Court finds that criminal defendants in parole revocation proceedings are entitled to confront and cross-examine witnesses and *10 that the scope of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

354 F.Supp.2d 1

354 F.Supp.2d 1, 65 Fed. R. Evid. Serv. 1246

(Cite as: 354 F.Supp.2d 1)

that right is as has been expounded in *Crawford v. Washington.*

[11] The *Crawford v. Washington* opinion itself supports this conclusion. In a discussion of confrontation and reliability, and the virtues of the first and the vice of the second, the Court noted that the right to confrontation is "a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner." *Id.,* 124 S.Ct. at 1370. Under such a formulation, it becomes exceedingly difficult to imagine an alternative definition of confrontation. That definition would have to provide a procedural rather than a substantive protection. *See Id.* An "unpredictable" test of reliability would not be an acceptable method for ensuring its satisfaction. *Id.* And it would need to be based, in some fashion, on a traditional notion of 'due process.' *Morrissey,* 408 U.S. at 489, 92 S.Ct. 2593. The only definition of confrontation that can withstand those restrictions is the definition adopted by *Crawford v. Washington.* No judicial formulation can do better, and this Court need not try.

This Court need not postulate those instances, discussed in *Morrissey,* in which testimonial evidence, not admissible at a criminal trial would nevertheless be admissible in a parole revocation hearing. As previously noted, *Morrissey's* distinction between parole revocation hearings and criminal prosecutions does not contemplate a confrontation different in *kind,* from Sixth Amendment confrontation. Perhaps this caveat places limits, however, on the *scope* of confrontation required by due process. Conceivably a situation may arise in which a defendant's parole is revoked and the evidence presented at the hearing consists both of evidence for which the defendant was not afforded an opportunity to confrontation as well as evidence for which he was afforded an opportunity to confrontation. Suffice it to say that when un-confronted testimonial evidence comprises the *sole* basis of a decision to revoke a criminal defendant's parole, thereby implicating his liberty interest, that defendant has been afforded no

opportunity for confrontation. As *Morrissey* expressly directs that such a defendant be afforded, as a minimum requirement of due process, the right to confront adverse witnesses (a practice defined in *Crawford v. Washington),* a hearing void of any such opportunity is surely constitutionally defective.

Because the Petitioner's parole was revoked solely based on the hearsay testimony of a police officer and a police report, which was also based exclusively on hearsay evidence, this Court finds that the Petitioner's constitutional due process right to confrontation of adverse witnesses has been violated.

For these reasons, the Petitioner's Habeas Corpus Petition is **GRANTED.** The custodian of this Defendant is **ORDERED** to provide him with a new hearing that affords him his right to confront and cross-examine any adverse witnesses or to release him from custody.

**SO ORDERED.**

354 F.Supp.2d 1, 65 Fed. R. Evid. Serv. 1246

**Motions, Pleadings and Filings (Back to top)**

• 1:03cv02007 (Docket)

(Sep. 26, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.