UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JAMES F. JOHNSON, | * | |
|     Petitioner, | * | Civil Action No. 05-2504 (RWR) |
| | * | |
| v. | * | |
| | * | |
| WARDEN DENNIS HARRISON, | * | |
|     Respondent. | * | |

**UNITED STATES PAROLE COMMISSION'S OPPOSITION TO
PETITIONER'S PETITION FOR A WRIT OF HABEAS CORPUS**

The United States Parole Commission ("the Commission"), by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Opposition to petitioner's Petition for a Writ of Habeas Corpus. As explained below, petitioner's claims are without merit and his petition should be summarily denied.

**PROCEDURAL HISTORY**

On August 22, 1994, petitioner, armed with a .380 caliber handgun, attempted to enter the apartment building of a female acquaintance. See Exhibit A, presentence report, at 2-3.[1] He subsequently was convicted in D.C. Superior Court case number F-8170-94 of Carrying a Pistol Without a License ("CPWL") and Possession of an Unregistered Firearm ("UF") in connection with these events. Id. at 1. On March 31, 1995, he was sentenced to 40 months to 10 years' incarceration for CPWL and to a consecutive 1 year term of incarceration for the UF conviction. See Exhibit B, sentence computation and Exhibit C, judgment and commitment order. These sentences were suspended and petitioner was placed on probation for 5 years. On February 18,

---

[1] In Exhibit A, the Commission has provided only those portions of the pre-sentence report that refer to the petitioner's offense and criminal history, and has not provided the portions of the report that address more confidential matters, such as petitioner's family history and health. The Commission will provide a full copy of the report in a manner designed to preserve its confidentiality upon the Court's request.

1997, his probation was revoked and he was sentenced to 40 months to 10 years for CPWL and to the consecutive 1 year term for UF. Id.

On October 10, 2003, petitioner was released on parole to supervision in the District of Columbia metropolitan area until June 23, 2007. See Exhibit D, certificate of parole. His written conditions of release stated that, among other things, he was:

> not [to] associate with persons who have a criminal record without the permission of [his] Supervision Officer.

Id. at 2, ¶ 6.

Approximately four months after petitioner's release on parole, the supervisory community supervision officer ("CSO") in his case notified the Commission of the following information: that petitioner had a prior conviction for Rape While Armed involving a minor victim and Assault with a Dangerous Weapon involving a minor victim; that "petitioner is in the medium-high risk category of sexual offenders, based on [an] assessment that was completed on February 24, 2004"; and that petitioner's CSO recently had visited petitioner's apartment building and learned that petitioner had been having contact with minors. See Exhibit E, Court Services and Offender Supervision Agency ("CSOSA") February 27, 2004 letter. In response, the Commission amended petitioner's conditions of release to include a prohibition on:

> any association or contact of any kind with minor children . . . without the approval of [petitioner's] Supervision Officer.

See Exhibit F, notice of action. Petitioner's conditions of release also were amended to permit CSOSA to search his "person, property and abode" to determine if he continued to have contact with minors. Id.

On June 16, 2005, petitioner's CSO Anthony Hinton requested that the Commission issue a parole violation warrant for petitioner. See Exhibit G, alleged violation(s) report.[2] CSO Hinton's violation report included information gathered by CSO John Taberski, who initially supervised petitioner. In July 2004, based on petitioner's "escalating" hostility toward CSO Taberski, the Supervisory CSO "determined it would be appropriate to transfer his supervision to CSO Anthony Hinton." Exhibit G, at 8. Hence, CSO Hinton had supervised petitioner for almost a year at the time that the CSO prepared the violation report.

In his 10-page, single-spaced report, the CSO explained that petitioner had violated the conditions of his release by having contact with minors without the approval of his CSO; associating with persons who have a criminal record by visiting inmates at the D.C. jail even though his CSO instructed him not to do so; giving false information to his CSO about, among other things, the vehicle that he drove; and being arrested in a traffic matter for Operating After Suspension and failing to timely report his arrest to his CSO. Id. Documentation attached to the CSO's report included a copy of petitioner's Criminal Justice Act badge;[3] a February 5, 2004 memorandum from the D.C. Department of Corrections banning petitioner from entering the

---

[2] Under 28 C.F.R. § 2.56(c), the Commission may exempt portions of documents or make summaries of documents. Due to a potential witness security issue, the Commission has done so in this case, and thus is providing a redacted copy of CSO Hinton's violation report and the attachments thereto as Exhibit G. This is the same document presented to petitioner at his final revocation hearing. The Commission believes that the redacted materials are sufficient for disposition of this case. However, upon the Court's request, the Commission will provide a complete copy of this document for in camera review.

[3] Regarding this badge, CSO Hinton contacted Brendan Wells at the Public Defender Service who stated that "due to the offender's criminal record, the badge should not have been issued" and that "it was strange that the offender's NCIC record run at the time of the offender's application was missing." Exhibit G, at 9.

Central Detention Facility; a May 24, 2005 log sheet from the D.C. Department of Corrections showing that petitioner had visited eight inmates between January 2004 and April 2005; and inmate records showing that at least some of the inmates that petitioner visited were serving sentences at the Central Detention Facility. Id.

On August 3, 2005, the Commission issued a parole violation warrant for petitioner's arrest based on the charges that he had associated with persons with criminal records; had prohibited contact with his minor daughter on March 15-16, 2004; had failed to cooperate with his CSO; and had been arrested on May 18, 2005 in a traffic matter and had failed to report the arrest to his CSO. See Exhibit H, memorandum, warrant application and warrant.

The Commission's warrant was executed on August 17, 2005. See Exhibit I, probable cause hearing digest. On September 2, 2005, after several delays, the probable cause hearing was held. Id. Petitioner, who was represented by counsel, denied the charges. Id. at 1-3. As to the charge of associating with persons having a criminal record, petitioner's counsel proffered that petitioner "was not interacting [with] individuals for the purpose of continuing criminal activity" but was an investigator "working on behalf of" an attorney and judges. Id. at 2. The hearing examiner found probable cause with respect to this charge. Id. The examiner did not find probable cause on the other charges and recommended that petitioner be re-instated to supervision and that the revocation proceedings be terminated. Id. at 2-4. In the event that the Commission decided to hold petitioner for a revocation hearing, CSO Anthony Hinton was identified by the Commission as a witness to appear at that hearing. Id. at 5. Petitioner did not request any adverse witnesses. Id. at 5. In the event that he was not released, petitioner asked to

receive a local revocation hearing.  Id. at 9.  His signature appears on a form informing him of his right to call adverse witnesses.  Id. at 8-9.

On September 6, 2005, CSO Hinton notified the Commission of "additional evidence that is to be used as proof that the offender was in non-compliance" with the condition of his release that he not have contact with minors.  See Exhibit J, addendum to alleged violation(s) report dated 6/16/05.  The CSO explained that on August 17, 2005, the Supervisory CSO (Paul Brennan) in this matter had come into possession of petitioner's cell phone, had reviewed the contents of that phone, had discovered that petitioner had telephone contact with "Jasmine" on August 16, 2005, and that petitioner's minor daughter was named Jasmine.  Id.  Attached to the CSO's letter was the Supervisory CSO's "running record" detailing this information.  Id. at 2.

On September 7, 2005, the Commission disagreed with the examiner's recommendation that petitioner should continue on parole and ordered that he be held for a local revocation hearing.  See Exhibit K, notice of action.  On September 13, 2005, after receiving the CSO's September 6 addendum to his earlier report of alleged violations, the Commission added the charge that petitioner had contact with his minor daughter on August 16, 2005.  See Exhibit L, supplement.

Petitioner's revocation hearing was held on November 28, 2005.  See Exhibit M, hearing summary.  The hearing summary reflects that the examiner covered approximately four preliminary matters with petitioner before beginning the hearing.  First, the hearing examiner notified petitioner that his counsel was not present and that the examiner "would schedule this hearing for sometime in the future as there had been this administrative error."  Id. at 2.  However, petitioner stated that he "wanted today's hearing and that he wanted it without an

5

attorney." Id. After the examiner discussed the matter in more detail with petitioner, petitioner waived his right to an attorney in writing and verbally. Id.

Second, the examiner noted that petitioner had not received notice of the hearing or a copy of the "warrant information" to review. Id. Petitioner nonetheless stated that he wished to proceed and "was ready to defend himself." Id. The examiner then gave him the documentation to "allow him to fully review Charge No. 1 [associating with persons with a criminal record] as well as Supplemental Charge No. 5 [unauthorized contact with his minor daughter] and the backup information." Id. After reviewing this material, petitioner "indicated he wanted to proceed" with the hearing. Id. The examiner noted that:

> when reading the opening statement, I made sure the subject understood every section of that statement and he indicated that he was willing, ready and prepared to proceed with [the] hearing in spite of the fact that he had not been given advance written notice nor disclosure of the packet of material which we normally send in advance of a hearing.

Id. at 5.

Third, CSO Anthony Hinton was present as an adverse witness for the Commission, but petitioner "indicated that he did not want any adverse witnesses." Id. at 2. The examiner noted that he overruled petitioner's objections during the hearing when petitioner changed his mind and requested adverse witnesses:

> [L]ater, during the hearing, [petitioner] attempted to [re]visit this issue indicating that he want his ex-CSO (who is now a USPO) and the Supervising CSO who took the telephone from him and made a phone call, which then allegedly connected [him] with his minor daughter. This examiner overruled the subject's objection as he had the opportunity at the Probable Cause Hearing to request any adverse witnesses regarding [the charge that he associated with persons having a criminal record] and, he had the opportunity to request such witnesses when we began the hearing regarding [the charge that he had contact with minors] since he had already reviewed the information in the warrant supplement. He did not do so at that point in time and desired to proceed with the hearing.

Id. at 2-3.

Fourth, the hearing examiner also addressed petitioner's objection that his probable cause hearing and his revocation hearing were untimely. The examiner overruled these objections on the ground that petitioner had not shown any prejudice. Id. at 3.

After hearing from petitioner and CSO Hinton and after reviewing CSO Hinton's June 16, 2005 violation report and his September 6, 2005 addendum to that report and the documents attached to the report and the addendum, the hearing examiner concluded by a preponderance of the evidence that petitioner had violated the conditions of his release. As to the charge that petitioner had associated with persons having a criminal record while petitioner acted as an investigator, the examiner noted as follows:

> The subject essentially states that a person named James Johnson may have been visiting other inmates in the jail but that this James Johnson was not him. He states that there is no evidence tying him directly to the person who was visiting the jail.
>
> He does acknowledge that person was apparently entering with an investigators [sic] badge but he states that he had a different investigator's badge. He does acknowledge that this investigator's badge was confiscated by the CSO. CSO Hinton testified that the Associate Warden of the jail was contacted and she said that it was the subject who had entered the jail and had contact with numerous inmates on various dates. The identification was made when the CSO gave the Associate Warden the subject's DC No. and Register No. They then investigated that register number and then identified our subject as the person [who] had been entering the institution.

Id.

The examiner further noted that he did not "find as credible the subject's explanation that it must have been some other James Johnson that was entering the institution but not him." Id. Based on all this evidence and the documentation that CSO Hinton had provided - including the

May 24, 2005 log sheet from the D.C. Department of Corrections - the examiner noted that he "firmly believes that the subject was the individual visiting the jail and other offenders." Id. at 5.

The examiner also concluded that petitioner had telephoned his minor daughter on August 16, 2005. As to this charge, petitioner explained as follows:

> [T]he phone that was confiscated from him was the property of the Public Defender Service. He states that he had just gotten the phone and that he had made no calls to a minor on that phone. He states that a person with a similar name was a secretary to one of the public defenders.

Id. at 4.

The hearing examiner did not credit petitioner's explanation, and concluded that "it is more likely than not that our subject did have phone contact with his minor daughter at the number, which was programmed into his cell phone." Id. at 4.

The examiner recommended that petitioner's parole be revoked, that none of the time that he spent on parole be credited to his sentence, and that he serve 16 months and receive a presumptive parole date of December 16, 2006. Id. at 5.

On January 5, 2006, the Commission issued a Notice of Action in which it agreed with the examiner's findings, revoked petitioner's parole, and ordered him to serve 16 months. See Exhibit N, notice of action. Petitioner administratively appealed this decision to the Commission's National Appeals Board, arguing, among other things, that the Commission failed to follow its regulations during the revocation proceedings, and he complained of the timeliness of his probable cause and revocation hearings. See Exhibit O, petitioner's appeal. On February 17, 2006, the Commission affirmed its previous decision. See Exhibit P, notice of action on appeal.

## ARGUMENT

Petitioner argues that he is entitled to a writ of habeas corpus authorizing his reinstatement to parole for three reasons. First, he essentially contends that there was insufficient evidence supporting the revocation of his parole. This claim fails because petitioner has not shown that the revocation of his parole was "totally lacking in evidentiary support or . . . so irrational as to be fundamentally unfair." Ash v. Reilly, 431 F.3d 826, 830 (D.C. Cir. 2005) (citations omitted). Second, petitioner claims that his probable cause hearing and his local revocation hearing were untimely. This claim fails because he has not shown how he was prejudiced by the slight delay in these hearings. And third, he asserts that his due process right to confront witnesses at his revocation hearing was impinged. This claim fails both because the record reflects that petitioner was given the opportunity to request witnesses and failed to do so and because he has not shown any prejudice from the non-appearance of witnesses at his hearing.

## I.  Petitioner Has Not Shown that the Revocation of His Parole Was Totally Lacking in Evidentiary Support or So Irrational as to Be Fundamentally Unfair

### A.  Legal Principles

In Morrissey v. Brewer, the Supreme Court held that parole is not an absolute form of liberty, but rather a form of liberty constrained by conditions and subject to revocation if the parolee has violated those conditions "so as to indicate that the parolee is not adjusting properly and cannot be counted on to avoid antisocial activity." 408 U.S. 471, 479 (1972). The Morrissey Court established "the minimum requirements of due process" to which a parolee is entitled when revocation of his parole is at issue, and held that due process demands "some orderly process, however informal." Id. at 482, 488-89.

Hence, a "parole revocation is not the continuation of a criminal trial but a separate administrative proceeding at which the parolee does not possess the same rights as a criminal defendant at trial." Maddox v. Elzie, 238 F.3d 437, 445 (D.C. Cir.), cert. denied, 534 U.S. 836 (2001). "[L]etters, affidavits, and other material that would not be admissible in a criminal trial" may be considered in a parole revocation proceeding. Id. at 443 (internal quotation marks and citation omitted). Indeed, a parole revocation may be based on hearsay evidence, as long as this hearsay evidence is reliable. Crawford v. Jackson, 323 F.3d 123, 124 (D.C. Cir.), cert. denied, 124 S. Ct. 150 (2003)

The "preponderance of the evidence" standard applies in the parole revocation context. See 28 C.F.R. § 2.105(a) (2003) (Commission may revoke parole appropriate where "the Commission finds by a preponderance of the evidence that the parolee has violated one or more conditions of parole"); see also Allston v. Gaines, 158 F. Supp. 2d 76, 80 (D.D.C. 2001) ("the Parole Commission need only find a violation of parole conditions by a preponderance of evidence").

A court may not overturn a parole revocation decision unless the parolee establishes that the decision was "either totally lacking in evidentiary support or . . . so irrational as to be fundamentally unfair." Ash, 431 F.3d at 830 (citations omitted); see also Crawford, 323 F.3d at 129 (same); Duckett v. Quick, 282 F.3d 844, 847 (D.C. Cir.) (same), cert. denied, 537 U.S. 863 (2002); Allston, 158 F. Supp. 2d at 79 ("judicial review of the Parole Commission's decision to revoke parole is narrowly circumscribed"; the Commission's decision must be upheld unless there is no rational basis supporting it).

**B.     There was sufficient, reliable evidence in the record to revoke petitioner's parole**

At the conclusion of petitioner's local revocation hearing, after considering the testimony of CSO Hinton, the documentation that the CSO submitted, and petitioner's proffered explanations, the Commission found by a preponderance of the evidence that petitioner had associated with persons having a criminal record and that he had contact with minor children, both in violation of the conditions of his release.  See Exhibit M.

Regarding the first charge, the examiner based his finding on CSO Hinton's detailed violation report, the documentation attached thereto, CSO Hinton's testimony, and petitioner's less-than-credible explanation about this charge.  In his report, CSO Hinton described the investigation by petitioner's initial CSO (John Taberski) and by CSO Hinton into whether petitioner had associated with persons having a criminal record.  Exhibit G.  The information in and attachments to this report showed that petitioner was a Criminal Justice Act investigator and had a badge signifying this fact (id., at 12); that petitioner had visited approximately eight inmates (including a step-sibling) at the D.C. Jail between January 2004 and April 2005 (id. at 20); and that he had submitted expense claims for his work as an investigator, including an interview with a criminal defendant (id. at 15-16).  The examiner also considered CSO Hinton's testimony, including his testimony about his conversations with personnel at the D.C. Jail regarding their conclusion that petitioner had, in fact, "entered the jail to conduct legal matters with inmates."  Id. at 9.  Based on all this, the examiner "firmly" believed that petitioner had violated the condition of his release that forbade him from associating with persons having a criminal record without the permission of his CSO.

The Commission also found that petitioner had violated the special condition of his parole that he not have any contact with minor children without the approval of his CSO.  This

finding was based on CSO Hinton's addendum to his June 16, 2005 violation report as well as the Supervisory CSO's "running record."

Petitioner nonetheless claims that the Commission impermissibly relied solely on hearsay in revoking his parole and that there was insufficient evidence to revoke his parole. Petitioner is mistaken on both points. Where hearsay testimony has a sufficient indicia of reliability, such hearsay, on its own, may form the basis for a parole violation finding. See Crawford, 323 F.3d at 129; see also Ash, 431 F.3d at 830 (reliance on hearsay testimony in revoking parole is permissible). Here, to the extent that the hearing examiner relied on hearsay, the hearsay was reliable. It consisted in part of the CSO's detailed violation report. See Crawford, 323 F.3d at 130 (noting that police report relied upon at revocation hearing was "quite detailed, an indicia of reliability"). The examiner also relied on documents that the CSO had received from the D.C. Department of Corrections, including a log of visitors that showed that petitioner had visited approximately eight inmates over the course of more than a year, and the Supervisory CSO's running record. These documents likely would qualify as business records and hence are reliable. Fed. R. Evid. 803(6). "Time-honored exceptions to the hearsay rule, such as those found in Fed. R. Evid. 803, rest on the idea that 'under appropriate circumstances, a hearsay statement may possess circumstantial guarantees of trustworthiness sufficient to justify nonproduction of the declarant in person" even in the trial setting, and even if the person may be available. Ash, 431 F.3d at 831 (citation and internal quotation marks omitted).[4]

---

[4] We note that petitioner relies on the Magistrate Judge's opinion in Ash v. Reilly for the proposition that parole cannot be revoked based solely on hearsay. Pet. at 6. This opinion has been overturned by the D.C. Circuit. We further note petitioner asserts that he objected to the introduction of hearsay testimony at the revocation hearing, id., but that the hearing summary does not reflect such an objection.

Petitioner also appears to allege that there was not enough evidence to show that he violated the conditions of his release. The record in this matter reflects that the hearing examiner considered CSO Hinton's testimony and the documents that he provided in concluding that petitioner had violated the conditions of his release. The record further reflects that the examiner weighed petitioner's incredible explanations. See Crawford, 323 F.3d at 130 (upholding revocation where the revocation decision was based in part on the prisoner's "far-fetched explanation" regarding the victim's injuries). On this record, petitioner has not shown that revocation of his parole was "either totally lacking in evidentiary support or . . . so irrational as to be fundamentally unfair." Ash, 431 F.3d at 830. Because petitioner has failed to meet this difficult standard, his claim on this point should be summarily denied.[5]

## II. Petitioner was not prejudiced by the tardiness of his probable cause or revocation hearings

Petitioner contends that because he was not provided with a probable cause hearing within 5 days of his arrest or a local revocation hearing within 65 days of his arrest, he is entitled to reinstatement to parole. Although the probable cause and local revocation hearings that petitioner received were delayed, these brief delays do not warrant the relief that petitioner seeks.

The Commission's regulations state that a D.C. parolee arrested on a violator warrant is entitled to a probable cause hearing within five days of the parolee's retaking. See 28 C.F.R. § 2.101(a). Here, petitioner was arrested on the warrant on August 17, 2005. His probable cause

---

[5] Petitioner also appears to claim that he was not warned about not associating with inmates at the jail. Pet. at 3. This claim is contradicted by the June 16, 2005 violation report which reflects that in approximately February 2004, CSO Taberski sanctioned petitioner for associating with inmates at the jail. Exhibit G, at 3.

hearing was delayed four times.[6]  The hearing ultimately was held on September 6, 2005, approximately 16 calendar days after the day of his arrest.  Thus, petitioner correctly asserts that his probable cause hearing was untimely, but much of the delay was of his own making and, more importantly, he has not shown any prejudice as a result of this delay.  He has not, for example, alleged (much less established) that had this hearing been held within five days of his arrest, the Commission would not have found probable cause and would not have required him to be held in custody for a local revocation hearing.  Therefore, petitioner's claim on this point fails.  See, e.g. Sutherland v. McCall, 709 F.2d 730, 732 (D.C. Cir. 1983) (no prejudice where petitioner offered no proof of prejudice and record did not suggest that the 33-month delay in holding his revocation hearing prejudiced his defense).

Petitioner also has not demonstrated any prejudice as a result of the late revocation hearing in his case.  Under the Commission's regulations, a parolee such as petitioner is entitled to a local revocation hearing within 65 days of the parolee's retaking.  See 28 C.F.R. § 2.102(f).  Petitioner's local revocation hearing was held on November 28, 2005, approximately 102 days after August 17, 2005 (the date that he was arrested on the violator warrant).  See Exhibit M.  Thus, there was a delay of slightly more than one month in holding petitioner's local revocation

---

[6]  The hearing was first delayed because petitioner was not brought from the Correctional Treatment Facility to the hearing.  Exhibit P, at 1.  It was next delayed when petitioner requested a continuance to obtain a private attorney.  Id.  It was again delayed when petitioner's attorney "stated that he could not represent [petitioner] because [counsel] would testify as a voluntary witness at [petitioner's] probable cause hearing on the charge of Association with Persons having a Criminal Record."  Id.  And it was delayed a fourth time when the Public Defender Service announced that it could not represent the petitioner due to a conflict of interest.  Id.

hearing.[7]  Again, however, petitioner has not shown how this delay prevented him from defending against the revocation charges nor does he claim (as he cannot) that he has been held in custody longer than he would have been had he received a revocation hearing within the 65-day time period.  Sutherland, 709 F.2d at 732.

Moreover, the remedy for delay in holding a revocation hearing is a writ of mandamus ordering the Commission to hold the hearing and not, as petitioner claims, the issuance of a writ of habeas corpus compelling the prisoner's reinstatement to parole.  Id.; see also Berg v. U.S. Parole Comm'n, 735 F.2d 378, 379 n.3 (9th Cir. 1984) (where petitioner's parole revocation hearing was held 36 months late, his only remedy was a writ of mandamus); Smith v. United States, 577 F.2d 1025, 1028 (5th Cir. 1978) (due process entitled inmate only to an order to conduct hearing); Bryant v. Grinner, 563 F.2d 871, 872 (7th Cir. 1977) (where parole revocation hearing not held within requisite time frame, "the proper remedy would be to compel the decision and not to release the prisoner from custody").  Since petitioner has received his parole revocation hearing, the issue is now moot.  See  Berg, 735 F.2d at 379 n.3 (because required hearing was held, albeit late, petitioner's remedy "now moot").

### III.     Petitioner's claim regarding adverse witnesses fails

At petitioner's final revocation hearing, his CSO appeared as an adverse witness.  See Exhibit M.  Petitioner now complains that he was not able to confront and cross examine other witnesses and further asserts that it was not his "obligation" to request them but rather the

---

[7]     The Commission's documents do not reflect the cause for the delay.

Commission's duty to present them. Pet. at 7. These claims fail. A parolee must request adverse witnesses to preserve his right to confront and cross-examine them. <u>Duckett</u>, 282 F.3d at 847-48 ("[t]he right to cross-examine witnesses can be waived"); <u>Kell v. U.S. Parole Comm'n</u>, 26 F.3d 1016, 1019-20 (10th Cir. 1994) (in the revocation context, "[p]etitioner's right to confront adverse witnesses is not absolute").

Here, the record reflects that petitioner was given the opportunity to request adverse witnesses more than once and that he consistently failed to do so. At his probable cause hearing where he was represented by counsel, petitioner was permitted to request adverse witnesses to appear at his local revocation hearing. <u>See</u> Exhibit I, at 5, 8. Petitioner acknowledged his rights, but did not request any witnesses. <u>Id.</u> at 5, 8-9 ("In support of any request for a local revocation hearing, you should indicate any witnesses you plan to present at the revocation hearing and any adverse witnesses you wish to appear. Such adverse witnesses will be presented unless good cause is found to deny your request for their appearance"). At his revocation hearing, after ensuring that petitioner was informed about the supplementary charge that he had unapproved contact with minors, the hearing examiner gave petitioner the opportunity to have adverse witnesses present. <u>See</u> Exhibit M, at 5. Petitioner declined and elected to proceed with the revocation hearing. <u>Id.</u> ("the subject verbally waived any request for adverse witnessess to be present ... and had previously waived adverse witnesses when he had his Probable Cause Hearing.") Thus, petitioner was granted at least one opportunity to request adverse witnesses for each parole violation charge, and he elected to proceed with the hearing without the presence of any witnesses. Accordingly, he waived his right to have witnesses of his choosing present.

Moreover, petitioner has not shown that he was prejudiced in any way by the non-appearance of witnesses. Although it is not entirely clear, he apparently wanted his initial CSO, John Taberski, to appear at the revocation hearing. However, he never specifies how Mr. Taberski's testimony would have aided him. Indeed, such a claim is dubious at best as the details of Mr. Taberski's supervision of petitioner are included in CSO Hinton's June 16, 2005 violation report - and none of this information is remotely helpful to petitioner. Petitioner also claims that his daughter Jasmine should have been called as a witness, but the information she had to report was already in the record. Thus, again, petitioner has not shown that he was prejudiced by the non-appearance of these witnesses. See Ash, 431 F.3d at 830 (noting that "[e]ven if there is no good cause [to excuse the non-appearance of a parolee's witness], a parolee is not entitled to a new parole hearing unless he shows prejudice from his inability to cross-examine the missing witness") (citation and quotation marks omitted).

**CONCLUSION**

For all these reasons, petitioner's petition is without merit and should be summarily denied.[8]

>
> Respectfully submitted,
>
> KENNETH L. WAINSTEIN
> United States Attorney
> D.C. Bar Number 451-058
>
> ROBERT D. OKUN
> D.C. Bar Number 457-078
> Assistant United States Attorney
> Chief, Special Proceedings Section
>
>
> ____/s/_____
> MARGARET J. CHRISS
> Assistant United States Attorney
> D.C. Bar Number 452-403
> 555 4th Street, N.W.
> Washington, D.C.  20530
> (202) 307-0874

---

[8] One final note is necessary.  After petitioner filed his habeas petition, he was transferred to the Federal Correctional Institution in Fort Dix, New Jersey, where the warden is Charles Samuels.  When petitioner filed his petition, however, he was an inmate at the D.C. Correctional Treatment Facility, where the warden is Dennis Harrison. Warden Harrison is within this Court's jurisdiction and because the Court had jurisdiction over the petitioner's custodian when the petitioner filed his petition, this Court retains jurisdiction despite the petitioner's subsequent transfer.  See Rumsfeld v. Padilla, 124 S. Ct. 2711, 2720 (2004) (if district court had jurisdiction over petitioner's custodian when petitioner filed petition, court maintains jurisdiction if petitioner thereafter is transferred to another jurisdiction); Stokes v. U.S. Parole Comm'n, 374 F.3d 1235, 1239 (D.C. Cir.) (same), cert. denied, 125 S. Ct. 448 (2004); Blair-Bey v. Quick, 151 F.3d 1036, 1039 (D.C. Cir. 1998) ("When a prisoner seeks to challenge parole-related decisions, the warden of the prison and not the U.S. Parole Commission is the prisoner's 'custodian'").  The Court therefore should strike the named respondent and substitute Warden Samuels as the respondent to comply with the requirements of 28 U.S.C. § 2243 ("The writ or order to show cause shall be directed to the person having custody of the person detained").

**CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that, this 3rd day of April 2006, I caused a copy of the foregoing Opposition to Petitioner's Petition for Writ of Habeas Corpus and exhibits thereto, to be served, via first-class mail, postage prepaid, on:

James F. Johnson
Fed. Reg. # 07561-016
FCI Fort Dix
East: P.O. Box 2000
West: P.O. Box 7000
Fort Dix, NJ 08640

                                                      ____/s/_____
                                                      Assistant United States Attorney