# **Exhibit O**

#07501-014

TO: UNITED STATES PAROLE COMMISSION
5550 FRIENDSHIP BOULEVARD
CHEVY CHASE, MARYLAND  20815    JAN 18 2006

FROM: JOHNSON, JAMES F
D.C.D.C. # 119-202      SFS-4
CENTRAL TREATMENT FACILITY - D.C. JAIL
1901 E ST. S.E.    WASHINGTON, D.C. 20003

DATE: JANUARY 15, 2006

RE: APPEAL OF RIGHT (FINAL REVOCATION HEARING 11-28-05)

This appeal of right follows the final revocation hearing held on November 28, 2005 after being held in Commission's custody for, then, a total of (106) One Hundred and Six days from arrest. This parolee attempted to "informally resolve this matter" with and through correspondance to The Office of the General Counsel to which no responce had been received as of 1-15-06 (see attached copy) and said concerns are duly incorporated in and with this Appeal of Right.

REQUESTED REMEDY (IES)

1. Complete reversal of any adverse recommendation.
2. The addition of One (1) Salient Factor Score (SFS) from (4) Four to (5) Five or possibly (6) Six for Superior Program Complet of D.C. Drug Program 1998-2000.
3. Reparole to (a) Supervisio; (b) CCC; (c) Residential Electronical Monitoring Sevellence; or, (d) Community Service.

The Commission has several methods of "Gradual Sanctions" preferrable to incarceration which were not exhausted in the instance of this writer inspite of the submission by the CSOS Parole Officer Anthony Hinton in applying for the Warrant Application; see page 10, paragraph 2: "To the Offender's credit, he has reported for all appointments with this office as directed. (From 10/03 thru 8/05) He has continuously ~~tested negative~~ for drug use. He is currently now testi →

ONCE MONTHLY WHICH IS A TRIBUTE TO HIS REFRAINING FROM DRUG USE. MR. JOHNSON IS CURRENTLY IN COMPLIANCE WITH HIS REQUIREMENT OF SEX OFFENDER TREATMENT. HE WAS GIVEN A SEXUAL HISTORY EXAM/POLYGRAPH ON 10/18/04, WHICH SUGGESTED THAT HE HAS NOT HAD ANY ADDITIONAL VICTIMS OF THE CRIME SIMILAR TO HIS SEX OFFENSE THAT OCCURRED IN 1976. MR. JOHNSON WAS GIVEN A MAINTENANCE POLYGRAPH EXAM ON 1/14/05, WHICH HE SUCCESSFULLY PASSED."

MOREOVER, AFTER HEARING AND REVIEWED ALL SUBMITTED ADMINISTRATIVE CHARGES, ON SEPTEMBER 2, 2005, PROBABLE CAUSE HEARING EXAMINER DONNA McLEAN, RECOMMENDED THAT MR. JOHNSON BE "REINSTATED TO PAROLE SUPERVISION AND FURTHER, THAT REVOCATION PROCEEDINGS BE TERMINATED."

THUS, WITH MERELY ONE (1) WRITTEN NOTICE OF ONE (1) ADMINISTRATIVE VIOLATION (ASSOCIATION WITH PERSON(S) WITH CRIMINAL RECORD) AND NOT ENGAGING IN ANY NEW CRIMINAL CONDUCT SINCE BEING PAROLED ON OCTOBER 10, 2003 THRU PAROLE ARREST ON AUGUST 17, 2005, IT APPEARS FROM THE OBSERVATIONS OF (2) TWO INDEPENDANT U.S. PAROLE COMMISSION REPRESENTATIVES, THAT ANY ALTERNATIVE TO INCARCERATION WOULD BE BOTH PROPER AND FITTING TO ANY FAIR MINDED THINKING PERSON REVIEWING THIS CASE.

# APPEAL

1. PAROLEE WAS ORIGINALLY SANCTIONED BY CSOSA PAROLE OFFICER JOHN TABERSKI FOR NON COMPLIANCE OF ASSOCIATION WITH PERSON(S) WITH CRIMINAL RECORD AFTER CONSULTATIONS WITH USPC ANALYST DEIRDR JACKSON, THIS SANCTION INCLUDED "DAILY REPORTING TO THE SUPERVISION OFFICE FOR TWO (2) WEEKS." SEE PAGE NO. 3 OF WARRANT APPLICATION.

2. HEARING PROCEDURAL VIOLATIONS: (AS PER COMPLIANCE AGREEMENT SUBMITTED BY THE COMMISSION TO THE U.S. DISTRIC COURT, WASHINGTON, D.C. 4/27/01 - UNCONSTITUTIONAL VIOLATION OF DUE PROCESS OF LAW TO PAROLE VIOLATORS: SEE CIVIL ACTION NO. 01-0010 (EGS) AT 173 F. Supp. 2d 35:

   (a.) MR. JOHNSON WAS DENIED THE STATUTORILY MANDATED FIVE (5) DAY PROBABLE CAUSE HEARING. HE WAS ARRESTED AND TAKEN INTO U.S. PAROLE CUSTODY ON AUGUST 17, 2005 AND NOT

PRESENTED FOR HIS INITIAL PROBABLE CAUSE HEARING UNTIL AUGUST 27, 2005 WHERE HE REQUESTED (1) ALL WITNESSES, (2) APPOINTMENT OF COUNSEL. THE D.C. PUBLIC DEFENDER SERVICE REQUESTED A FIVE (5) day CONTINUANCE AT THIS AUGUST 27, 2005 hEARING BECAUSE MR. JOHNSON WAS charged AS VIOLATION OF ASSOCIATION WITH PERSONS WITH CRIMINAL RECORD AS A CJA INVESTIGATOR WHOSE TRAININGS AND BADGE IDENTIFICATIONS WERE PROVIDE THROUGH THE D.C. PUBLIC DEFENDER SERVICE AND COULD CAUSE CONFLICT OF INTEREST, THUS, THE PROBABLE CAUSE HEARING WAS officially CONDUCTED ON SEPTEMBER 2, 2005, NO REASON, WRITTEN OR OTHERWISE WERE PROVIDED TO JOHNSON OR HIS CJA PROVIDED ATTORNEY E. SCOTT FRISON JR. BAR NO. #478092, AS TO WHY THE FIVE (5) day STATUTORY PROBABLE CAUSE HEARING WAS NOT held OR WHY "Good CAUSE WERE NOT GIVEN." THIS VIOLATION WAS A PREJUDICE TO MR. JOHNSON'S CONSTITUTIONAL Rights BECAUSE he well knew of the five (5) day STATUTORY LIMIT AND HAD THEN properly AND effectively (1) prepared for his defense, (2) called ALL NECESSARY WITNESSES, AND (3) WAS properly INFORMED OF THE FIVE (5) day STATUTORY LIMIT BY THE D.C. PUBLIC DEFENDER SERVICE AND THE WARRANT APPLICATION BY THE U.S. MARSHAL SERVICE.

3. ON SEPTEMBER 2, 2005 MR. JOHNSON HAD SEVERAL WITNESSES TO APPEAR FOR HIS PROBABLE CAUSE HEARING, THIS WITNESSES LIST CONSIST OF BOTH VOLUNTARY AND ADVERSARIAL, INCLUSIVE OF ATTORNEY Aogie O'BRYANT, NONE OF WHOM (EXCEPT ATTORNEY Aogie O'Bryant WHOM BROUGHT WRITTEN signed STATEMENTS TO THE HEARING FROM The five (5) WITNESSES, which were Later ACCEPTED AND ADMITTED AS EVIDENCE FOR JOHNSON BY HEARING EXAMINER DONNA McLean ON SEPTEMBER 2, 2005) were ALLOWED TO ATTEND THE PROBABLE CAUSE HEARING, PUBLIC Defender ATTORNEY MONA ASINER WITNESSED BOTH THE WITNESSES ATTENDANCE, THE DENIED ENTRY, AND THE WRITTEN LETTERS IN JOHNSON'S BEHALF.

  IN ANY EVENT, FAILURE OF THE PROBABLE CAUSE EXAMINER TO SECURE THE APPEARANCE AND ATTENDANCE TO THE PROBABLE CAUSE HEARINGS VIOLATED MR. JOHNSON'S CONSTITUTIONAL PROTECTIONS AS CITED IN MORRISSEY VS. BREWER, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) "The ONLY UNEQUIVOCAL PRONOUNCEMENT REGARDING PAROLE REVOCATION HEARINGS IS THE

that the right to confrontation is a minimum requirement of due process." See Ash Vs. Reilly (U.S. Parole Commission) 354, F.Supp. 2d. 1, 7-8, 2004 WL 280097, 6 (D.D.C. 2004)

4. The Probable Cause Hearing Examiner failed to follow the statutory regulations at 28 C.F.R. 2.101(a), "...if the Examiner finds Probable Cause, the Examiner (shall) schedule a Final Revocation Hearing to be held (within) (65) Sixty Five days of such Parolee's arrest." Obviously this was not followed since no Revocation Hearing was held until this Parolee was in custody for (106) One Hundred Six days and no written notice of continuance or otherwise given to Mr. Johnson and or his Attorney of record, thus, for the same prejudices stated above in item No. 3, Parolee reiterates this prejudice here.

5. The Commission failed to follow it's own agency guidelines at 28 C.F.R. and the "Compliance Plan" it agreed to as submitted to the U.S. District Court, Washington, D.C., October 12, 2001, Long Vs. Gaines, 00-0010 (EGS), 173 F.Supp. 2d 35, page 2, item #2.."Full Revocation Hearings will occur between 50 and 65 days from arrest." After notification of and by the Probable Cause Examiner on September 2, 2005 of its Probable Cause Findings on charge No. 1 of Parolee's Arrest Warrant, the Commission issued a prompt Notice of Action dated September 7, 2005 stating:"Deny release and hold for a Local Revocation Hearing." This document failed to provide this Parolee, and or his Attorney of record, (1) the Time, (2) the Date, (3) the Place of the Local Hearing, nor (4), did it provide the opportunity to the Parolee, or his Attorney to request voluntary and adversary witnesses for confrontation and cross examination for the "Local Revocation Hearing, thus effective preparations were denied to Mr. Johnson because the Commission failed, on two (2) seperate occassions, to provide this Parolee, and or his Attorney of record, with a written notice stating the statutory date, place of the Revocation Hearing and the opportuni- to properly and effectively prepare for the Hearing or to call voluntary, or adversary, and or compulsory witnesses

Thus for the prejudice cited in Morrissey Vs. Brewer, supra, this Parolee request reversal of the adverse findings against him.

6. After the Commission had failed to provide this Parolee with the statutorily mandated (1) Five day Probable Cause Hearing, and (2) within the 50 and 65 days Final Revocation Local Hearing, that it then went on to violate Mr. Johnson's right to a "Final Determination Notice of Action will be given to the Parolee no later than 86 days after Parolee's Arrest." See item #4 of the U.S. Commission's Compliance Plan submitted to the U.S. District Court, Washington, D.C. 10/12/01 (EGS) Because the Final Revocation Hearing was not held until November 28, 2005, After Mr. Johnson had been arrested and held in custody for then, a total of (106) One Hundred Six days, Totaling 65 days from the 50 and 65 days limit, 41 days more from the 65 days limit, and 25 days more than the 86 days limit for the Final Notice of Determination Notice of Action.

Thus, this Appeal of Right follows Parolee's right to file an Appeal of such Final Notice of Action even though Parolee has not received such as of January 16, 2006, As (156) One Hundred and fifty six days has passed since this Parolee arrest and no written explanation given to Mr. Johnson or his Attorney of record for any of the mentioned delays, but since he had not been ordered release by this Commission, He duly submits his timely appeal of right.

7. More troubling and problematic for the Commission, is it's continual refusal to obey it's own Agency Guidelines. When the Commission issued it's Notice of Action dated September 7, 2005 stating: "Deny Release and Hold For A Local Revocation Hearing"

The Commission obviously "knew or should have known" that it had received if not new, then, additional information of anoth Administrative Non-Criminal Violation. 28 C.F.R. 2.101(9) reads:

"If the Commission is notified of an addition charge after Probable Cause has been found to proceed with a Revocation Hearing, the Commission may;

(1) Remand the case for a Supplemental Preliminary Interview if the New Charge may be contested by the Parolee and possibly result in the appearance of witness(es) at the Revocation Hearing;

(2) "Notify the Prisoner" that the additional charge will be considered at the Revocation Hearing "without conducting a supplemental interview; or

(3) Determine that the New Charge shall not be considered at the Revocation Hearing."

Here the Commission failed to do any of the above, but chose to present the New Charge against this Parolee at the Revocation Hearing inspite of Rule (2) above requiring written notifications to the Parolee and or his Attorney of record; further, 28 C.F.R. 2.101-06 (b) states: "If the New Charge has been received AFTER the Preliminary Interview has been conducted, the Prisoner, his Attorney, if any, (shall be informed by letter) that such charges will be considered at the Revocation Hearing, THE LETTER WILL ALSO STATE THAT ALLEGED VIOLATOR MAY REQUEST (ADVERSE) WITNESSES." A letter of notification should also be issued if New Evidence is received AFTER the Probable Cause Hearing findings requires reinstatement of charges upon which a finding of no probable cause was made.

The Revocation Hearing Examiner, on 11/28/05, told this Parole of the New Charge (that Parolee had been reported by a Third Party, not Prisoner's Supervision Officer) that on August 16, 2005, the day before Mr. Johnson's arrest, that Mr. Johnson had made a cellphone call to his Daughter in violation of the Commission's Special Condition of "No Contact with Minors."

Since this August 16, 2005 New Charge was obviously not charged on the original Arrest Warrant Application, the Commission and the Revocation Hearing Examiner were "Bound" by the 28 C.F.R. 2.101-06 (b), supra; the Revocation Hearing Examiner (1) not only failed to provide any written notice of the Hearing, but (2) also the New Charge; nor (3) the Letter advising the Violator of his right to request the appearance of Adverse Witness(es)."

Pg 6.  →

The Revocation Examiner told this Prisoner he was not required to any written notifications and that it was the sole responsibility of the Parolee to address and call Adverse Witnesses. These actions and obvious denials constituted a "Gross Violations" of this Parolee's "Fundamental Fairness Protections" of "Due Process" and requires "Instant Reversal" by and from the Commission upon this Request.

8. In any event, the Commission and the Examiner at the Revocation Hearing, and the Supervision Officer, all "well knew, or should have known" that the information received of the New Charge was obviously "Tainted and Illegal".

This Parolee was told (since there were no written letters or notice(ies) of the New Charge) that a Third Party had told Supervision Officer Anthony Hinton that the Cell Phone Johnson had on his person when being taken into custody by the U.S. Marshals, then taken by U.S. Marshal (Johnson then stated to the Marshals and Hinton that the Cell Phone was the property of a Local Law Firm and that they would have someone retrieve it, I was allowed a phone call and made the arrangements for someone to pick up my property. I found out later from the D.C. Jail that the Cell Phone was not released to the authorized parties, rather, Hinton's Supervisor had possession of the Cell Phone and would not release it to the Law Firm. Johnson was told that the Third Party, Hinton's Supervisor, had informed Hinton that Parolee Johnson had contacted his daughter Jasmine on that Cell phone on August 16, 2005, that he, Mr. Paul Brennan had called the person named "Jasmine" listed in the Cell phone, that a "Jasmine" had answered but denied that I had called her." There is so much wrong with this entire Cell Phone; (1) It was the property of a Law firm, and any information it contained, by Law, is Privileged Information; both Hinton and Brennan as Law representatives should have known this, but most certainly the U.S. Parole Commission and it's Analyst; (2) No one verified that this Parolee was in possession of that Cell Phone on August 16, 2005 it was received from me on August 17, 2005; (3) No one verified that the "Jasmine" whom was said —

Pg 7  →

TO HAVE ANSWERED THE Cell Phone ON THE (OTHER END) was (MY DAUGHTER) OR EVEN (if) THAT PERSON WAS IN FACT, A MINOR; (4) NO ONE ATTEMPTED TO OBTAIN A WRITTEN STATEMENT FROM THIS "JASMINE" OR SOME (ADULT) if SHE WAS INDEED A MINOR, AS THIS COMMISSION WAS OBVIOUSLY LEAD TO BELIEVE; (5) NOR WAS THERE ANY ATTEMPT TO PRESENT A STATEMENT FROM THE LAW FIRM, which THEY DID CONTACT, TO GET WRITTEN APPROVALS TO "ENTER THIER Cell PHONE OR TO physically CONTACT ANY PERSON SO LISTED IN THIER Cell Phone, BECAUSE, OBVIOUSLY, if THEY THOUGHT THAT THIS WAS legal, AND THAT THE "JASMINE" LISTED THEREIN WAS IN FACT "My daughter," then they would have known that my daughter Jasmine was indeed A MINOR AND THAT "MOST CERTAINLY" THE NEED FOR AN "ADULT'S" INTREVENTION WAS NOT ONLY PRUDENT, BUT Lawful AND NECESSARY!

THE COMMISSION SHOULD NOTE THAT IT WAS CSOSA OFFICERS JOHN TABERSKI AND PAUL BRENNAN WHO IN JANUARY OR FEBRUARY, 2004, Approached my daughter JASMINE Wilson ON no legal AUTHORIZATIONS, AND demanded AND TOOK from her (SHE WAS A MINOR OF 12 YEARS OLD AT THIS TIME!) A Cell Phone which I have purchased for her and her Niece for Christmas, 2003, you should note too, that Jasmine Wilson and her Cousin Katrina Wilson, both were minors, And both possessed Cell Phones bought by me, however the Cousin was not harmed, though mentioned in the Warrant Application) when this Parolee found out what had happened, John Taberski told him that he AND Brennan had told my daughter that "I HAD INSTRUCTED THEM TO TAKE THE Cell Phone." Thinking that I would REACT foolishly, which I did NOT, I went directly to CSOSA Directors Paul Quander and Adrienne Poteate, Explaining that my daughter was not under CSOSA's supervision AND I gave no AUTHORITY TO confiscate "MY purchased CEll PHONE "AND IT WAS CONSIDERED AS Robbery, especially if I had been REPORTED AS TAKING A Cell Phone from A civilian."

IN ANY EVENT I was Transferred TO Mr. Anthony Hinton, And I hadn't heard ANY MORE from the Robbery BUT THAT IT WAS "Under INVESTIGATION". John Taberski AND Paul Brennan Took ME IN Brennan's office SOON After THE Robbery of my daughter AND Told ME TO " STAY AWAY FROM your daughter, that if you have ANY CONTACT with her AT All We will send you back to jail."

It was later, in March, 2004, that both Taberski and Brennan requested from the Commission the Special Condition to stay away from minors and especially my daughter. So it was easy to have the Commission to issue another charge of my alleged cell phone call on "August 16, 2005" AFTER it was known that the Probable Cause Examiner had found No Probable Cause on the original charge on minor contact and recommended reinstatement to supervision.

The Commission will note that in applying to the Commission for the Special Condition against Johnson, Taberski and Brennan misquoted the Doctor. On page #4 of Warrant Application, Taberski wrote that Dr. Michael Lavin of the Augustus Institute recommended (1) Group and Individual Treatment, (2) "cautioned" that it would not be safe for the offender to have UNSUPERVISED contact with his daughter, who is a minor." This is vastly different from the representations to the Commission by Taberski and Brennan whom requested that "absolutely no contact" with my daught, as supervised or not, nor with any other minor. Yet CSOSA Anthony Hinton wrote in this same Warrant Application that "Mr. Johnson is currently in compliance with his requirement of Sex Offender Treatment. He was given a Sexual History Polygraph Exam on 10/18/04, which suggested that he has not had any additional victims of the crime similar to his Sex Offense that occurred in 1976. Mr. Johnson was given a Maintenance Polygraph Exam on 1/14/05, which he successfully passed. During this exam, the offender did reveal he spoke with his daughter on the telephone on Christmas Day."

Sir, it would appear that the telephone call on Christmas Day would have been cited also, but Hinton wrote this, not Taberski, and the Sex Offender Therapist, and the Sex Offender Unit, found no fault or offenses reported during my nearly two (2) consecutive years of reporting and treatments under the Sex Offenders Treatment Observation Unit!

Eventhough 28 C.F.R. explicitly states that all property taken shall be returned. Neither of the cell phones mentioned herein both in the possession of Paul Brennan, has been returned, however neither had been implicated in no crime!

pg. 9                                                              →

Interestingly enough, 28 C.F.R. 285-20 (2) (1) *Approval of Searches.* (1) "A search shall be conducted only upon the written approval of an application for such search. The application shall be in writing, shall be reviewed by the Supervision Officer's supervisor, and shall be approved in writing by the Chief Supervision Officer of the district or his or her designee, which may not be the officer's supervisor!"

9. The Commission will also observe, that upon page 10 of the warrant application, it has my Supervision Officer Anthony Hinton as the person whom "normally" submits for a warrant for taking a parolee into custody, however, you will note where Hinton signatured the application on 6/22/05 while his supervisor, and Taberski's, Mr. Paul Brennan, signatured the signing on the "6/16/05" one (1) whole week before Hinton, more over, the final remarks submitted by Parole Officer Hinton, paragraph number 2, page 10, does not describe a person whom may be really considered as a community and safety risk to warrant any serious sanction without respects to an alternative to incarceration as per 28 C.F.R. 2.98-01, 28 C.F.R. 2.101-05 especially so where the Sex Offender Treatment Psychiatrist, Therapist, Psychologist, and or Monitors has not submitted not one (1) shred of evidence to the contrary in nearly two (2) consecutive years!

10. Finally, the Commission will note 28 C.F.R. 2.103-07 Hearing Procedure: "In a local revocation hearing, the alleged violator's Supervision Officer normally shall be permitted to be present throughout the proceedings, "except during the (deliberation) of the Examiner". Mr. Hinton did not leave the hearing room at no time until the hearing was terminated, this then further violated this parolee's rights and should aid in his quest to overturn this case and return this parolee to parole supervision or any alternative to incarceration as stated in parolee's opening address on the front page of this Appeal of Right.

Whereas, Parolee respectfully submit that he be immediately reinstated for the aforementioned reasons stated herein under penalty of perjury.

In God We Trust,

*James F. Johnson*

cc: Hon. E. G. Sullivan (D.D.C.)
Chairman, U.S. Senate Judiciary, Hon Patrick Leahey
Chairman, D.C. City Council Judiciary, Hon. Phil Mendleson
Hon. Isaac Fulwood, Commissioner, U.S. Parole Commission
file

Attachments (2)
   Long vs. Gaines
   Ash vs. Reilly